A97A2533. IN RE REYNALDO VICTORINE.
(495 SE2d 864)

JOHNSON, Judge.

Reynaldo Victorine was subpoenaed to testify as a state's witness in the murder trial of Fredric Tokars. Victorine previously testified at a pre-trial hearing regarding Tokars' prior legal representation of Victorine in the appeal of a murder conviction. At the pre-trial hear-

ing, Victorine responded to all questions posed by the state and defense and did not invoke his privilege against self-incrimination.

According to Victorine, he hired Tokars in 1992 to handle his appeal for a fee of $50,000. Tokars told him he was a part-time judge and that he knew a judge on the appellate courts. Tokars indicated that a portion of Victorine's fee would be used to bribe the judge and "that the person up there would help him and make sure [his] appeal [would] get granted for sure."

Victorine also testified that when discussing a triple murder charge against him in the Virgin Islands, for which he was not prosecuted, Tokars asked Victorine if he could help Tokars hire someone to "do the same thing," meaning to do a "hit." Tokars told Victorine that in exchange for his help, Tokars would give him back a portion of the fee for the appeal. Victorine testified he did not furnish Tokars with the name of any hit man.

Tokars worked on Victorine's case, but withdrew from the case prior to filing the appeal. Victorine later learned about the murder of Tokars' wife while serving his prison sentence for the murder conviction. Subsequently, Victorine was interviewed by Cobb County police officers regarding his association with Tokars. Victorine further testified at the pre-trial hearing about a drug charge he "beat" in DeKalb County.

When Victorine was called as a state's witness in the Tokars case, he invoked his privilege against self-incrimination to questions posed by counsel for both the state and defense. At least three hearings were held, and counsel was appointed in an effort to resolve whether Victorine could validly invoke his Fifth Amendment privilege against self-incrimination.

At the third hearing, the trial judge advised Victorine that if he determined Victorine's invocation of the privilege was invalid, Victorine would be instructed to answer the questions. The trial judge further warned Victorine that if he still refused to answer the questions after being instructed to do so, he would be held in contempt of court and punished. Victorine responded to some questions, but refused to testify about certain conversations with Tokars, invoking his Fifth Amendment privilege. After the trial court determined that Victorine could not validly invoke his privilege against self-incrimination and after Victorine persisted in refusing to answer the questions in violation of the court's order, Victorine was held in contempt. The trial court then continued the matter to a fourth hearing, where the state was permitted to ask the same questions it had propounded at the pre-trial hearing.

At the fourth hearing, Victorine responded to certain questions, could not recall answers to some questions, and invoked his Fifth Amendment privilege not to testify as to some questions. Specifically,

Victorine refused to answer questions regarding "an appeal for the witness and information about a hit." After determining that Victorine could not validly invoke his privilege against self-incrimination, the trial judge again ordered Victorine to respond to the questions and held him in contempt when he refused to answer after having been ordered to do so.

The trial court merged all counts of contempt into one count and sentenced Victorine to pay a $500 fine and to serve 20 days in custody.[1] Victorine appeals this conviction for contempt. We affirm.

1. In his first enumeration, Victorine contends that no rational trier of fact could have found him guilty of contempt beyond a reasonable doubt. We disagree.

Clearly, a trial court is empowered to inflict punishment for contempt of court upon a witness who disobeys its lawful order. OCGA § 15-1-4 (a) (3). "The appropriate course where, as here, a witness invokes his right to remain silent is as follows: First, the trial court must determine if the answers *could* incriminate the witness. If so, then the decision whether it *might* must be left to the [witness]. On the other hand, where the trial court determines that the answers *could not* incriminate the witness, he must testify (or be subject to the court's sanction). It is for the court to decide if the danger of incrimination is 'real and appreciable.'" (Citations and punctuation omitted; emphasis in original.) *Lawrence v. State*, 257 Ga. 423, 424, n. 3 (360 SE2d 716) (1987); *Spivey v. State*, 200 Ga. App. 284, 285 (407 SE2d 425) (1991) (physical precedent only).

In the present case, the trial judge properly followed this procedure. After Victorine invoked his right to remain silent, the trial judge determined that his answers could not incriminate him and ordered him to answer the state's questions. When Victorine still refused to respond to the questions, after three hearings and the appointment of counsel to advise Victorine on the witness stand, the trial court held Victorine in contempt. He was held in contempt again after refusing to answer the questions during a fourth hearing. Clearly, Victorine violated the trial court's order to respond to the state's questions. The ultimate issue raised in this case is whether the trial court correctly determined that Victorine's responses would not incriminate him. We find, based on the evidence presented, that the trial court made a correct determination.

Questions eliciting testimony that Tokars allegedly offered to refund an amount of money to Victorine if he could help Tokars with a "hit" did not incriminate Victorine in the Virgin Island murders. No questions regarding Victorine's involvement in the Virgin Island

---

[1] At the present time, Victorine is serving a life sentence for murder.

murders were posed, and Victorine specifically indicated in his pretrial hearing testimony that he refused to hire a hit man for Tokars. Victorine's assertion that testimony regarding Tokars' alleged intent to pay off an appellate judge could have been used against him to charge him with bribing a public official likewise lacks merit. As the trial court indicated in its order, the acts and conversations took place in 1992, and the statute of limitation for the alleged bribery had expired by the time of the trial in 1997. OCGA §§ 16-10-2; 17-3-1. Regarding testimony of the drug charge in DeKalb County which Victorine allegedly "beat out," Victorine willingly answered questions regarding his prior drug charge and responded that the charge was dismissed. He was not held in contempt regarding questioning on this issue.

Viewing the evidence in a light most favorable to support the trial court's ruling, we find a rational trier of fact could have found Victorine guilty beyond a reasonable doubt of contempt. See *In re Phillips*, 225 Ga. App. 478, 479 (1) (484 SE2d 254) (1997).

2. Victorine further contends the contempt order is deficient on its face in that it fails to set forth the facts upon which the trial judge concluded that he was guilty of contempt. Victorine specifically argues that the trial judge made no finding that his actions had a deleterious impact on the court proceeding or in any way interfered with the administration of justice. However, a review of the record shows that before holding Victorine in contempt, the trial judge cited *Wynne v. State*, 139 Ga. App. 355, 357 (228 SE2d 378) (1976), noting that witnesses who have been properly subpoenaed are under an obligation to further the administration of justice by appearing and testifying as to any relevant facts within their knowledge. In addition, contrary to Victorine's assertion, the trial court's contempt order is replete with facts supporting the contempt order.

*In re Shafer*, 216 Ga. App. 725, 726 (1) (455 SE2d 421) (1995), cited by Victorine in support of his argument, is inapposite. In *Shafer*, no transcript of the proceeding in which the allegedly contemptuous conduct occurred was contained in the record on appeal. Therefore, it was necessary for the trial court's order to memorialize the events that transpired so as to provide a proper record for appellate review. In the present case, not only does the contempt order contain facts supporting the trial court's imposition of contempt, but the transcripts reflecting Victorine's contemptuous conduct are part of the record in this appeal and afford this Court an ample record for review. Thus, this enumeration lacks merit.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 15, 1998.

*Roderick H. Martin*, for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Russell J. Parker, Assistant District Attorneys, McKenney & Froelich, Jerome J. Froelich, Jr., Jimmy D. Berry*, for appellee.