## A08A1203. WILLIAMS v. THE STATE.
### (671 SE2d 268)

PHIPPS, Judge.

Following a jury trial, Otis Williams was convicted of armed robbery, aggravated assault, hijacking a motor vehicle and possession of a firearm during commission of a felony upon Melanie Fisher. He was indicted for but found not guilty of armed robbery, aggravated assault and possession of a firearm during commission of a felony upon Susannah Barnes. Williams claims that the trial court erred by admitting similar transaction evidence, refusing to admit a hearsay statement and refusing to require an alibi witness to testify. He also claims that his trial counsel was ineffective. Finding no reversible error, we affirm.

The evidence showed that at approximately 2:30 or 3:00 a.m. on August 5, 2004, Barnes was sitting in her car outside her boyfriend's house when she was approached by two young men with a gun. She screamed until they told her to stop. When they told her to get out of the car and give them what she had, she opened the door and handed them her purse. Her boyfriend yelled from the house that he was going to call the police, and the men threatened him and then left.

About twenty minutes later, police officers arrived and Barnes described the two men. Later that month, she reviewed a photo array and identified Williams as one of the robbers.

At approximately 9:30 p.m. on August 17, 2004, Fisher parked her car, a Honda Accord, in front of her house. After she exited her car, a young man approached her with a gun and told her to give him her car keys. She complied. He asked where her purse was, and she told him it was in the car. He then got into her car and left.

Later that night, Fisher gave police officers a description of the young man, her car and the items that had been taken. Two nights later, officers showed her a photographic array and she identified Williams. Her vehicle was later recovered, along with her keys and some items from her purse.

Atlanta Police Department investigator Kevin Dakin investigated the Barnes and Fisher robberies. He participated in Williams's arrest at an apartment complex, where the police also recovered Fisher's car.

1. Williams claims that the trial court erred by admitting evidence of two other robberies in which he was implicated. He argues that those offenses were not sufficiently similar to the charged crimes to have been admitted as similar transactions.

Before hearing testimony about the other robberies, the jury was instructed that the evidence was to be considered for the limited purpose of showing, if it did, the identity of the perpetrator of the charged crimes. The first robbery involved Abelardo Velazquez. Velazquez testified that on August 12, 2004, at approximately 8:00 a.m., he was parking his car at his home. He was approached by a male who opened his car's passenger door and pointed a gun at him. Velazquez did not speak English and thus could not understand what the man was demanding. Two other males with guns also approached his car. Velazquez was robbed of his wallet, cell phone and keys. Velazquez was later shown a photo array and identified Williams as one of the robbers.

The second robbery involved Alberto Sigala. Sigala testified that on August 17, 2004, while working at a construction site, he was approached by a young male with a gun who demanded money. Sigala complied. A second young male with a gun was also present, but did not come close to Sigala. After the incident, Sigala was able to describe the man closest to him and the truck they came in, including the license plate number. He later identified Williams as the robber from the same photo array shown to Fisher, Barnes and Velazquez. Some time after the Sigala and Fisher robberies, officers located the truck Sigala had described and found Fisher's stolen property in the truck.

All four of the robberies occurred in metropolitan Atlanta. The Barnes and Fisher robberies were committed in Fulton County, within approximately one mile of each other. Velazquez and Sigala were robbed in Forest Park.

Before any evidence of independent offenses may be admitted, the trial court must conduct the hearing required by Uniform Superior Court Rule 31.3 (B) and the state must show three things: (1) that it seeks to introduce the evidence not to raise an improper inference as to the defendant's character but for some proper purpose; (2) that there is sufficient evidence to establish that the defendant committed the independent offense; and (3) that there is a sufficient connection or similarity between the independent offense

and the crime charged so that proof of the former tends to prove the latter.[1]

"Independent crimes are admissible to show motive, intent, plan, identity, bent of mind or course of conduct."[2] Although termed "similar transactions," "[t]he ultimate issue in determining the admissibility of evidence of other crimes is not mere similarity but relevance to the issues in the trial of the case."[3] The independent crime and the charged offense need not be identical in character if there is a sufficient connection between them.[4] Where similar transaction evidence is offered to prove identity, the state may prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes or it may show a logical connection between crimes that are essentially dissimilar.[5]

We conclude that the factors necessary to admit the independent crimes as similar transactions were sufficiently proven. The other robbery evidence was introduced to show identity, which is a proper purpose.[6] Velazquez's and Sigala's testimony and their identification of Williams from the photo array were sufficient to establish that Williams committed those robberies. The Sigala robbery was logically connected to the Fisher robbery because the items taken from Fisher's purse were found in the same truck used in the Sigala robbery, which Sigala described in sufficient detail to allow the investigating officers to link it to his robbery. Thus, the trial court properly admitted the Sigala robbery evidence at trial.[7]

The Velazquez robbery was similar to the Fisher robbery in numerous respects.[8] The robberies occurred within a week of each other; the victims had just parked their cars outside their residences when they were approached by a black male with a gun and robbed; the victims were both robbed of money, cell phones and keys; and they both identified Williams from the same photo array. Even if these similarities did not meet the test for admitting evidence to prove identity, we conclude that any error in admitting the Velazquez robbery evidence was harmless, as the evidence supporting Will-

---

[1] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[2] *Jones v. State*, 236 Ga. App. 330, 332 (1) (b) (511 SE2d 883) (1999) (citation and punctuation omitted).

[3] *Williams v. State*, 251 Ga. 749, 784 (4) (312 SE2d 40) (1984).

[4] *Wells v. State*, 237 Ga. App. 109, 113 (4) (514 SE2d 245) (1999).

[5] *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998).

[6] See *Jones*, supra.

[7] See *Lampkin v. State*, 277 Ga. App. 237, 239 (626 SE2d 199) (2006) (state must demonstrate sufficient connection *or* similarity between independent offense and crime charged so that proof of former tends to prove latter).

[8] See *Harris v. State*, 222 Ga. App. 52, 54-55 (2) (a) (473 SE2d 232) (1996).

iams's conviction was overwhelming, and it is highly probable that the error did not contribute to the judgment.[9]

2. Williams claims that the trial court violated his due process rights by refusing to admit a hearsay statement from W. J., a minor, that someone else had stolen Fisher's car and by refusing to allow him to cross-examine an investigator about W. J.'s statement. W. J. was not called to testify at trial because, according to Williams's counsel, he was unavailable. Outside the jury's presence, Williams's counsel read from the statement where W. J. was asked who had stolen the Honda from the lady in Atlanta. W. J. named someone other than Williams. The trial court refused to admit the statement because it did not fall under any exception to the hearsay rule and because Williams failed to show any persuasive assurance of the statement's trustworthiness.

To support his due process claim, Williams relies on the special circumstances test derived from *Chambers v. Mississippi*.[10] That test is an exception to the general rule that hearsay statements from third persons who claim to have committed the crimes for which the defendant is being tried are inadmissible.[11] The general rule applies even though the statement is against the declarant's penal interest.[12] But in exceptional circumstances, i.e., when the hearsay bears "persuasive assurances of trustworthiness" and is critical to the defense, it is admissible.[13]

W. J.'s statement does not fit within the *Chambers* test for several reasons. First, W. J.'s statement that someone other than him had stolen Fisher's car was not the same as a statement that W. J. had committed the crime. Second, there was no other evidence to corroborate W. J.'s statement that the person he named stole Fisher's car. Third, unlike in *Chambers*, W. J. was not present and could not have been cross-examined by the state so that his demeanor and responses could be weighed by the jury.[14] Because the trial court did not err when it excluded the proffered evidence,[15] it necessarily follows that the trial court did not err by refusing to allow Williams to cross-examine the investigator about the inadmissible statement.

3. Williams claims that the trial court erred by allowing one of his witnesses to refuse to testify after the witness invoked his Fifth

---

[9] See *Clark v. State*, 280 Ga. 899, 900 (2) (635 SE2d 116) (2006).

[10] 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973).

[11] *Inman v. State*, 281 Ga. 67, 72 (4) (635 SE2d 125) (2006).

[12] *Holmes v. State*, 265 Ga. App. 409, 410 (1) (593 SE2d 932) (2004).

[13] *Chambers*, supra at 302; *Inman*, supra.

[14] See *Chambers*, supra at 301; see also *Gardner v. State*, 263 Ga. 197, 198-199 (4) (429 SE2d 657) (1993) (*Chambers* not applicable where declarant does not testify).

[15] See *Inman*, supra; *Drane v. State*, 271 Ga. 849, 852-853 (2) (523 SE2d 301) (1999).

Amendment right against self-incrimination. In a hearing conducted outside the jury's presence, the witness, who was facing robbery charges in another county, informed the trial court that he did not want to testify.

> The appropriate course where, as here, a witness invokes his right to remain silent is as follows: First, the trial court must determine if the answers *could* incriminate the witness. If so, then the decision whether it *might* must be left to the [witness]. On the other hand, where the trial court determines the answers *could not* incriminate the witness, he must testify (or be subject to the court's sanction). It is for the court to decide if the danger of incrimination is "real and appreciable."[16]

The trial court here followed this procedure. First, outside the jury's presence, the witness testified that Williams was not involved in the Fisher or Barnes robberies because he and Williams had seen someone else driving the stolen Honda. The prosecutor then described a letter the witness had written to Williams, parts of which could be interpreted as incriminatory toward the witness with respect to his charges in the other county. The prosecutor informed the court that she intended to use the letter for impeachment if the witness testified before the jury. After the trial court informed the witness that he could testify at Williams' trial, but that he did not have to do so and that anything revealed at trial could be used against him later, the witness elected not to testify. Based on the evidence presented, the trial court resolved this issue correctly.[17]

4. Williams claims that his trial counsel was ineffective for allowing false testimony by an investigating officer, failing to produce W. J. at trial and failing to preserve his objection to the similar transaction evidence.

To establish trial counsel's ineffectiveness, Williams needed to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[18] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[19] The test for reasonable attorney performance is "whether

---

[16] *Lawrence v. State*, 257 Ga. 423, 424 (3), n. 3 (360 SE2d 716) (1987) (citations omitted; emphasis in original).

[17] See *In re Victorine*, 230 Ga. App. 209, 211 (1) (495 SE2d 864) (1998).

[18] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[19] Id. at 687-689.

some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."[20]

When reviewing a trial court's ruling on trial counsel's effectiveness, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[21]

(a) Williams claims that his trial counsel was ineffective for allowing an investigating officer to falsely testify that the Sigala robbery occurred within an hour after the Fisher robbery when in fact the Sigala robbery occurred first. He argues that this inaccurate testimony unfairly corroborated the Sigala and Fisher identifications with proximity in time.

Pretermitting whether trial counsel's failure to correct this testimony constituted deficient performance, Williams has failed to show prejudice.[22] Regardless of the exact timing of the robberies, the Sigala and Fisher robberies occurred on the same day and the items taken from Fisher's purse were found in the truck used in the Sigala robbery, which Sigala described in sufficient detail to allow the investigating officers to link it to his robbery. Williams has failed to show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that the result of the proceeding would have been different, but for counsel's error.[23]

(b) Williams claims that trial counsel was ineffective for failing to produce W. J. at trial when W. J. was in custody at the time. Williams argues that if W. J. had testified consistent with his statement, addressed in Division 2,[24] the jury would have reached a different result.

At the motion for new trial hearing, Williams's trial counsel testified that he had hired an investigator to locate W. J., but the investigator was unsuccessful. W. J. testified that he was incarcerated at the time he gave the statement Williams sought to have admitted and at the time of trial. W. J. testified that he did not recall giving the statement and refused to answer any questions about making such a statement, asserting his Fifth Amendment right against self-incrimination.

---

[20] *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998) (citations and punctuation omitted).

[21] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (citation omitted).

[22] See *Fortson v. State*, 280 Ga. 435, 436 (2) (a) (629 SE2d 798) (2006) (when ruling on ineffective assistance claim, we need not analyze the deficient performance prong if we determine the prejudice prong has not been satisfied).

[23] See *Davis v. State*, 264 Ga. App. 221, 228 (6) (590 SE2d 192) (2003).

[24] Supra.

Pretermitting whether trial counsel's failure to locate W. J. constituted deficient performance,[25] Williams cannot show prejudice.[26] If W. J. claimed no knowledge of the statement and refused to testify about it at the motion for new trial hearing, we cannot assume he would have testified differently or more fully at trial. Williams has failed to show that there is a reasonable probability that the result of the proceeding would have been different, but for counsel's failure to produce W. J. at trial.[27]

(c) Williams claims that his trial counsel was ineffective for failing to properly preserve his objection to the similar transaction evidence. Williams cannot show deficient performance because Williams's trial counsel did object when the similar transaction evidence was admitted at trial. Even if he had not done so or if his objection was inadequate, the evidence was properly admitted or any error in its admission was harmless.[28] Thus, there was no prejudice.[29]

Assuming that trial counsel's failure to correct the investigator's inaccurate testimony, his failure to produce W. J. at trial and any failure to preserve fully his objections to the similar transaction evidence constituted deficient performance, we conclude that Williams has failed to show prejudice sufficient to sustain his ineffective assistance of counsel claim.[30]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 25, 2008 —
RECONSIDERATION DENIED DECEMBER 15, 2008 —

*Eric J. Taylor*, for appellant.
*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellee.

---

[25] See generally *Tenorio v. State*, 261 Ga. App. 609, 613 (3) (583 SE2d 269) (2003) (hiring investigator does not relieve trial counsel of responsibility for ensuring thorough investigation).

[26] See *Fortson*, supra.

[27] See *Davis*, supra.

[28] See Division 1, supra.

[29] See *Davis*, supra.

[30] See *Schofield v. Holsey*, 281 Ga. 809, 816 (II) (642 SE2d 56) (2007).