WELCH, Presiding Judge.
Vincent Martez Trawick was convicted of murder, a violation of § 13A-6-2, Ala. Code 1975. The trial court sentenced Trawick to of 99 years’ imprisonment. Trawick made an oral motion for a judgment of acquittal and filed a motion for a new trial, both of which were denied. This appeal followed.
The following evidence was presented at trial. Rainey McIntyre testified to the following. A week or two before Christmas in December 2005,[1] Rainey McIntyre was babysitting her cousin Latanya McIntyre’s children. On that night, the children’s father, Zach “Big Dothan” Sever-son, came to the door with Vincent “Nookie” Trawick and Gregory “Pooh” Jones and requested to see his children. Rainey McIntyre told Severson that the children were asleep and that he could not see them. Severson had been drinking and was talking very loudly. Severson splashed an alcoholic drink on Trawick as Severson was talking. Severson and Trawick got into an argument; Severson got in Trawick’s face during the argument; and Severson “sped out,” leaving Trawick and Jones at the residence. (R. 36.) After Severson left, Trawick was upset and stated that when he saw Severson again, he was going to “remind him” of what had happened. (R. 37.)
The record reflects that Severson was shot multiple times on December 24, 2005, and that initially law enforcement was not privy to the identity of the assailant. In February 2006, the State offered a $5,000 reward for information leading to the arrest and conviction of the guilty person or persons. (C. 246.) Trawick was arrested and charged with the murder. At trial, which commenced on August 16, 2010, the State presented evidence that Severson died as a result of multiple gunshot wounds. The State presented evidence that the four bullets recovered from Sever- *1107 son’s body appeared to be large caliber bullets, either .40 or .45 caliber.
Officer Tony Luker with the Dothan Police Department testified to the following. On March 6, 2006, Officer Luker was present with Officer Frank Meredith when Officer Meredith interviewed Kenya Jackson about the Severson murder.
Officer Frank Meredith with the Dothan Police Department testified that on March 6, 2006, he interviewed Kenya Jackson regarding the Severson murder. Officer Meredith testified that Jackson provided him with “intimate details” regarding the murder. (R. 183.) As a result of Jackson’s information, Officer Meredith was able to arrest Vincent Trawick, and Jackson testified to the grand jury about the details of the Severson murder. Officer Meredith testified that Jackson did not cooperate with law enforcement after he testified before the grand jury, and Jackson appeared to be very scared.
The transcript of Jackson’s interview with Officer Meredith, which was admitted into evidence (R. 163.), reflected that Jackson stated:
“I goes around in front of Ms. Lucy’st[2]] house....
“So, by that time Nookie had spotted ... spotted Big Dothan, got ... went behind the house, got the gun. Big Dothan and Booney[3] pulled back up ... I guess ... got out or whatever. Dothan’s still in the driver’s seat. I went to go and get dressed for the club. Nookie was coming back around and I was like boy, what you about to do? Then I kept.. .my homeboy pieked me up ... rode around, smoked some weed. We pulled back up about a hour ... a hour and thirty minutes ... when we pulled up, I seen Vincent Trawick had the handgun pointed at Big Dothan. Told him to F— N-, let me get that. Let me get everything outta your pockets. Dothan like, no you ain’t taking s— from me and charged him. Boom. He shot four times. Dothan hit the ground. He walked over there and stood over him and shot him two more times. And told him F— N-, I was gonna kill you.”
(C. 188-89.)
Jackson also stated in the interview that Trawick had a .40 caliber handgun that was recovered by law enforcement. However, the weapon was not admitted into evidence.
Kenya Jackson testified to the following. Jackson testified that he had an unlawful-cocaine-possession case and an obstruction-of-justice case pending at the time he spoke with Officer Meredith regarding this matter. Jackson testified that he made false statements to Officer Meredith because Officer Meredith told Jackson that he would let Jackson out of jail if he assisted with the Severson case. Jackson testified that he did not see Trawick shoot Severson and that he made the whole story up.
Officer John Crawford with the Dothan Police Department testified that Cornelius Garlington wrote law enforcement a letter stating that he wanted to speak with them regarding Severson’s murder. Officer John Crawford testified that Garlington told him that “Nookie” committed the murder, and a transcript of the interview between Garlington and Officer Crawford was admitted into evidence. (R. 351.) The transcript of the interview on October *1108 30, 2006, reflects that Garlington told Officer Crawford that Alex “Nookie” Trawick committed the murder. (C. 184.) However, testimony at trial indicated that Alex Trawick is Vincent Trawick’s brother and that Alex Trawick was in prison for murdering his girlfriend. (R. 151.)
Garlington stated in the transcript,
“[Nookie] was just telling me more or less of what happened; just said that he was in the car with ‘Big Dothan,’ and they went to Ford Country to I think a girl named Tonya’s house. And um ... ‘Big Dothan’ was drunk and told him that uh.... He wasn’t taking him back to the bottom, you know across town. And so um.... He said that they got in a confrontation and uh ... They was arguing and ‘Big Dothan’ went to calling him names or whatever. So he got upset and he left and walked. And then he just said he was like man, I’m gonna get him. So the next day when ‘Big Dothan’ pulled up in the bottom and got outta the car, Alex approached him with a gun and ... started firing shots.”
(C. 184.)
At the end of the interview, Garlington indicated that he would be willing to testify in court as to this conversation. (R. 185.)
Garlington testified to the following. Garlington testified that at the time of trial he was in custody at the Houston County jail for a probation violation. Garlington denied that he spoke with law enforcement about Severson’s murder and denied that he knew Vincent Trawick and Alex Traw-ick. Garlington denied that he sent law enforcement a letter indicating that he had information about the Severson murder.
Officer Will Glover with the Dothan Police Department testified that Antonio McKinley told him that Vincent Trawick killed Severson. However, the record re-fleets that when McKinley was called to testify he stated that he remembered speaking with law enforcement about the Severson case, but he refused to answer the prosecutor’s questions and, as a result, was held in contempt of court.
However, the record contains a transcript of the interview on July 23, 2009, between Officer Will Glover and McKinley. The transcript, which was admitted into evidence (R. 350), reflects that McKinley stated that Big Dothan slapped Nookie in the presence of women, and Nookie was embarrassed.
McKinley stated:
“And so well that particular night, or evening ... Me, ‘Nookie,’ ‘Fonzo,’[4] and somebody else, we was all sitting out there chilling and dranking. And well ‘Big Dothan’ came up to go get him some’in. A shot inside the ‘Bootlegger’ house. And well, on his way in there ‘Nookie’ seen him. You know what I’m saying, ‘Nookie’ was like well, there the n- go right there. And so him and another cat ran behind [Lucy’s] house and masked up and came back. By the time he came back outta the house going to his car, they done came from beside the house. Well, the dude that was with ‘Nookie’ masked up, he didn’t do noth’in. He just stood back, but he was there ... standing there. ‘Nookie’ the one pulled the pistol out and shot the man. He shot him about three or four times I think....”
(C. 212.)
Latanya McIntyre testified that McKinley called her several times from jail and that she recorded some of those conversations. Latanya McIntyre testified that McKinley told her that Vincent Trawick had killed someone.
*1109 Trawick argues on appeal that the trial court erred in admitting as substantive evidence the out-of-court statements of Garlington, Jackson, and McKinley at trial. The State presented the testimony of Gar-lington, Jackson, and McKinley at trial; however, these three witnesses failed to testify in court that Trawick caused the murder of Severson. In response, the State impeached Garlington’s and Jackson’s testimony at trial with prior inconsistent statements the men had made to law enforcement.[5] Further, McKinley refused to cooperate at trial and refused to answer questions posed by the prosecution. The trial court subsequently held McKinley in contempt of court. (R. 333.) The State requested that the trial court declare McKinley to be a hostile witness and find McKinley to be an unavailable declarant pursuant to Rule 804, Ala. R. Evid. The trial court allowed McKinley’s pretrial statement to police to be admitted into evidence.
A. Garlington’s and Jackson’s Statements to Law Enforcement
In an apparent attempt to present substantive evidence that Trawick did, in fact, kill Severson, the State presented the out-of-court statements of Garlington and Jackson.
“Rule 607[, Ala. R. Evid.,] authorizes a party to bring against his own witness all weapons from the arsenal of impeachment that historically were reserved generally for opposing witnesses. This power resides in the prosecution in a criminal case, the criminal defense, and any civil party. One may, for example, impeach his own witness by showing that the witness made a statement or performed an act that is inconsistent with the witness’ present testimony. Bias-indicating acts or statements could likewise be used for such an attack. Other witnesses may be called to contradict the witness’ version of the facts.”
Charles W. Gamble, McElroy’s Alabama Evidence § 165.01(6)(a) (6th ed.2009).
“ ‘Prior inconsistent statements of a witness made out of court are admissible in evidence for the purpose of showing that the witness is not worthy of belief — that is, for impeachment purposes. Such evidence is not classed as hearsay.’
“29 Am.Jur.2d Evidence, § 500 (1967). (Emphasis supplied.) See also McEl-roy’s Alabama Evidence, swpra, at § 149.01(10). This type statement is not offered to prove the truth of the things said, and so does not fit the definition of hearsay.”
Jones v. State, 531 So.2d 1251, 1254 (Ala.Crim.App.1988).
“In Burgin [v. State, 747 So.2d 916 (Ala.Crim.App.1999) ], this court was persuaded by the federal courts’ interpretation of Rule 607 of the Federal Rules of Evidence, which is identical to the Alabama Rule:
“ ‘ “[Rule] 607 allows the government to impeach its own witness. See Fed.R.Evid. 607. However, ‘ “the government must not knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony.” ’ United States v. Gomez-Gallardo, 915 F.2d 553, 555 (9th Cir.1990) (quoting United States v. Whitson, 587 F.2d 948, 952-53 (9th Cir.1978)). Impeachment is improper when employed as a guise to present substantive evidence to the jury that *1110 would be otherwise inadmissible. Id. A determination must be made as to whether the government examined the witness for the primary purpose of placing before the jury substantive evidence which is otherwise inadmissible. Id.’”
“Burgin, 747 So.2d at 918, quoting United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.), cert. denied, 515 U.S. 1110, 115 S.Ct. 2264, 132 L.Ed.2d 269 (1995). As this court stated in Burgin, ‘“[i]t would be an abuse of the rule ... for the prosecution to call a witness that it [knows will] not give it useful evidence, just so it [can] introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence.” ’ Id.”
Smith v. State, 745 So.2d 922, 935 (Ala.Crim.App.1999). Garlington’s and Jackson’s statements to police were not admissible as substantive evidence, but were only admissible as impeachment evidence to show that Garlington and Jackson were not “worthy of belief.” See Lindley v. State, 728 So.2d 1153 (Ala.1998) (holding that where a nonparty witness denied making a prior statement, the statement may not be shown by the testimony of other witnesses). As this Court stated in Burgin v. State, 747 So.2d 916 (Ala.Crim.App.1999), above, the prosecution was not entitled to present Garlington’s and Jackson’s statements to the jury as evidence that Trawick caused Severson’s death. Further, as to Jackson’s statement, the trial court instructed the jury that the statement was admitted as a prior inconsistent statement. (R. 245.) See Burgin, 747 So.2d at 918, 919 (holding that prosecutor’s attempt to argue that State witness’s prior inconsistent statement admitted as impeachment evidence was substantive evidence of guilt was cured by trial court’s sustaining of objections and instructing jury that evidence was for impeachment purposes only). Later, when the trial court charged the jury before deliberations, it stated: “A prior inconsistent statement of a witness who is not a defendant, although usable for impeachment purposes, cannot be used as substantive evidence of an accused’s guilt.” (R. 455.) Therefore, this evidence was not admitted as substantive evidence and could not have been considered by the jury as such.
B. McKinley’s Statement to Law Enforcement
The State presented McKinley as a witness at trial; however, McKinley refused to cooperate at trial and refused to answer questions by the prosecution. The trial court subsequently held McKinley in contempt of court. (R. 333.) The State requested that the trial court declare McKinley to be a hostile witness and find McKinley to be an unavailable declarant pursuant to Rule 804, Ala. R. Evid. The trial court allowed McKinley’s pretrial statement to police to be admitted into evidence. However, for the reasons expressed below, this evidence was not admissible.
Rule 804(a)(2), Ala. R. Evid., designates a declarant unavailable if he or she “persists in refusing to testify concerning the subject matter of the declarant’s statement despite an order of the court to do so.” Certainly, McKinley persisted in refusing to answer the questions of the State after being ordered to do so and was, therefore, unavailable. However, evidence of the de-clarant’s prior statements is admissible under Rule 804(b), Ala. R. Evid., only if it is 1) former sworn testimony, 2) a statement made under belief of impending death, 3) a statement against interest, or 4) statements of personal or family history.
*1111 McKinley’s unsworn statement to law enforcement is, in pertinent part, as follows:
“And so well that particular night, or evening ... Me, ‘Nookie,’ ‘Fonzo’ and somebody else, we was all sitting out there chilling and dranking. And well ‘Big Dothan’ came up to go get him some’in. A shot inside the ‘Bootlegger’ house. And well, on his way in there ‘Nookie’ seen him. You know what I’m saying, ‘Nookie’ was like well, there the n-go right there. And so him and another cat ran behind [Lucy’s] house and masked up and came back. By the time he came back outta the house going to his car, they done came from beside the house. Well, the dude that was with ‘Nookie’ masked up, he didn’t do noth’in. He just stood back, but he was there ... standing there. ‘Nookie’ the one pulled the pistol out and shot the man. He shot him about three or four times I think....”
(C. 212.)
The State argues that the statement above was against McKinley’s pecuniary or proprietary interest pursuant to Rule 804(b)(8), Ala. R. Evid., which defines such a statement as: “A statement which was at the time of its making so contrary to the declarant’s pecuniary or proprietary interest that a reasonable person in the declar-ant’s position would not have made the statement unless believing it to be true.” However, McKinley’s statement was not against his personal interest. In fact, McKinley testified at trial that, at the time he made the statement to law enforcement, he was in court for matters related to a charge of felony escape. (R. 488.) At the time of this trial, McKinley was already in prison. (R. 438.) Further, as discussed above, the State had offered a $5,000 reward for information that would lead to the arrest and conviction of the guilty person or persons in this case. Therefore, at the time McKinley made the statement it was not contrary to his pecuniary and proprietary interest because he would have wished to receive assistance from the State with the charges pending against him and/or to receive the offered reward. Compare Dewolfe v. State, 62 So.3d 1142 (Fla.Dist.Ct.App.2011) (holding that trial court erred when it prohibited two witnesses from testifying that they heard the unavailable witness state that he had committed the theft the defendant had been convicted of because the statements were declarations against penal interest), and Williams v. State, 295 Ga.App. 249, 671 S.E.2d 268 (2008) (holding that third person’s statement naming someone other than defendant as the individual who stole victim’s vehicle was not self-incriminatory). Therefore, this self-serving statement was not admissible pursuant to Rule 804, Ala. R. Evid.[6]
Based on the foregoing, the judgment of the trial court is due to be, and is hereby, reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
WINDOM, KELLUM, and BURKE, JJ., concur. JOINER, J., concurs in the result.

. At trial, McIntyre was unable to recall the exact date this incident occurred.

. The record does not reflect the last name of "Lucy.” However, Jackson stated that Lucy's house was a "bootlegger house” at which whiskey was sold. (C. 190.)

. The identity of “Booney" is not clear from the record.

. The identity of "Fonzo” is not clear from the record.

. Trawick challenges on appeal the admission of the out-of-court statements of Garlington, Jackson, and McKinley. Trawick preserved his arguments as to this evidence by objecting to the admission of this evidence at trial. (R. 157, 164, 188, 232, 245, 251, 333.)

. Although Trawick argues that his conviction should be reversed and rendered, pursuant to Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), this Court may not render Trawick’s conviction.