**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 11, 2013**

# In the Court of Appeals of Georgia

A12A2260. DIXON v. THE STATE.

BARNES, Presiding Judge.

Following a bench trial, the trial court found Eric Lamont Dixon guilty of the armed robbery of a Cherokee County convenience store and the aggravated assault of one of its employees. The trial court denied Dixon's motion for new trial, resulting in this appeal.[1] Dixon contends that the trial court erred in admitting similar transaction evidence of five armed robberies committed in neighboring Bartow County in which Dixon was one of the alleged perpetrators. He further contends that

---

[1] We dismissed Dixon's previous appeal, Case No. A12A1836, because his original motion for new trial had been untimely filed. The trial court thereafter granted Dixon leave to file an out-of-time appeal, and Dixon timely filed a second motion for new trial. It is from the denial of his second motion for new trial that Dixon now appeals.

his trial counsel rendered ineffective assistance. For the reasons discussed below, we affirm.

*The Cherokee County Robbery.* Construed in favor of the trial court's finding of guilt,[2] the evidence introduced at the bench trial showed that at approximately 6:30 a.m. on January 10, 2009, a male carrying a dark backpack with a distinctive white design on the front and wielding a long kitchen knife entered a BP convenience store located near Interstate 75 in Cherokee County. He wore a blue jacket, a dark hood, a dark mask, dark gloves, jeans, and white tennis shoes.

Two employees, but no customers, were in the store at the time. The perpetrator approached one of the employees in the bakery section of the store and, using his left hand, touched her neck with the knife and demanded "all the money." The second employee intervened and told the perpetrator that he would give him the money, and the perpetrator followed him to the cash register in the front of the store. When the second employee opened the cash register, the perpetrator pulled the drawer out of the register and dumped the money from it into his backpack. The perpetrator then fled from the store.

---

[2] See *Hickman v. State*, 311 Ga. App. 544, 545 (716 SE2d 597) (2011).

A detective with the Cobb County Police Department who was on his way home drove up to the convenience store as the perpetrator fled from inside. The detective drew his weapon and yelled for him to stop. The perpetrator ignored the detective and ran behind a large mound of dirt where his getaway vehicle was concealed. The detective then saw the perpetrator pull away in what appeared to be "either a Honda or a Nissan" silver-colored, compact vehicle that was "nearly new" and had horizontally aligned LED brake lights integrated into the trunk lid. While the detective did not attempt to pursue the perpetrator, he could see from his vantage point that the vehicle headed onto Interstate 75. The detective went back to the convenience store and checked on the two employees, who were "emotionally shaken by what had just occurred."

After one of the employees called 911, law enforcement officers from Cherokee County responded to the scene. The two store employees and the Cobb County detective were unable to identify the masked perpetrator. Nevertheless, the employees and detective could describe aspects of the clothing that the perpetrator had been wearing. Additionally, video surveillance equipment from the store recorded the robbery, and the perpetrator left behind footwear impressions in the mud near the store.

*The March 2, 2009 Arrest.* The perpetrator of the Cherokee County robbery was not caught immediately. However, on March 2, 2009, law enforcement officers in neighboring Cobb County responded to a call of suspicious activity by two individuals wearing dark clothing outside a Shell station located near Interstate 75. The officers approached the two individuals, whom they identified as Defendant Dixon and Cedric Boone. A pat-down revealed pellet guns, which looked like handguns, on both men. Dixon told the officers that he and Boone were in the vicinity because they were going to meet "some girl" at an apartment complex behind the station. The officers then drove Dixon and Boone behind the station so that they could show the officers where they planned to meet the woman, but no apartment complex could be found there. Dixon at that point changed his story, claiming that "a girl named Jessica" was supposed to meet them near the station, and that "a guy named Bill" had dropped them off to meet her there. But Dixon did not know Jessica's telephone number.

Although Dixon claimed that he and Boone had been dropped off near the Shell station, officers quickly discovered a vehicle registered to Boone located near the store with the keys on the hood. The vehicle appeared to be positioned for quick

4

access to Interstate 75. After admitting that the vehicle belonged to Boone, Dixon and Boone were arrested on charges of loitering and prowling outside the Shell station.

At the time of his arrest, Dixon had black gloves in his coat pocket and a black ski mask rolled up on his head. He was wearing jeans and white tennis shoes, had a blue fleece jacket, and possessed an empty, dark backpack with a distinctive white design on the front of it.

In response to a be-on-the-lookout that had been issued, Cherokee County law enforcement officers learned of the arrests and began investigating Dixon as a person of interest in the Cherokee County robbery. In addition to discovering that the various clothing items and distinctive backpack possessed by Dixon matched those of the perpetrator seen on the video recording in the Cherokee County robbery and described by the witnesses, investigators learned that Dixon (unlike Boone) was left-handed, consistent with the perpetrator's use of his left hand to wield the knife. Investigators also discovered that Dixon's girlfriend often allowed him to borrow her Nissan Altima, which had horizontally aligned LED brake lights integrated into the trunk lid, consistent with the vehicle seen by the Cobb County detective when the perpetrator fled from the scene of the Cherokee County robbery. Moreover, the tennis shoes worn by Dixon at the time of his arrest had treads on the bottom of them

5

consistent with the footwear impressions that had been taken from the mud near the convenience store in Cherokee County. Based on this combined circumstantial evidence, Dixon was indicted for the Cherokee County robbery and for aggravated assault for threatening one of the store employees with the knife.

*The Bartow County Robberies.* In response to a separate be-on-the-lookout that had been issued, Bartow County law enforcement officers also learned of Dixon and Boone's arrests and began to investigate them for a series of armed robberies that had occurred there during the same time period. Specifically, two perpetrators had robbed a Kangaroo convenience store on December 21, 2008; a Bojangles restaurant on January 27, 2009; a Texaco convenience store on February 12, 2009; a second Texaco convenience store on February 17, 2009; and a second Kangaroo convenience store on February 18, 2009. All of the convenience stores were located near Interstate 75, , and all of them were robbed late at night or early in the morning when no customers were in the stores. The Bojangles restaurant also was located near a major highway, and it was robbed after closing for the night. Because the perpetrators had been masked, none of the victims could specifically identify them, but many were able to describe aspects of their clothing.

Additionally, the armed robberies of the four Bartow County convenience stores (in contrast to the robbery of the Bojangles restaurant) were all captured on video surveillance equipment. One of the perpetrators seen in the video recording of those robberies carried a backpack into which he would place the stolen money. The videos and photographs printed from those videos reflected that the backpack had the same unique design as the one worn by the perpetrator in the Cherokee County robbery and by Dixon at the time of his arrest – a dark backpack with a distinctive white design on the front. As in Cherokee County, the perpetrator seen carrying the backpack in the Barton County convenience stores also wore a mask, gloves, jacket, hood, jeans, and white shoes, and he used his left hand when he brandished a weapon.

In addition to the clothing items and backpack seized from Dixon at the time of his arrest that pointed to him as the perpetrator seen wearing the backpack in the Bartow County convenience store robberies, investigators learned that Dixon had been an employee of the Kangaroo store robbed on December 21, 2008. Furthermore, Dixon's DNA was found in saliva from a ski mask that had been discarded outside the Bojangles restaurant that had been robbed,[3] and investigators learned that Dixon

---

[3] The ski mask also contained the DNA of another individual whom the State Crime Lab was unable to identify.

7

had been an employee of that restaurant as well. Additionally, deposit slips from the Bojangles restaurant that were dated January 27, 2009 were found in Dixon's closet when a search warrant was executed at his residence.

Boone ultimately admitted to being one of the perpetrators involved in the Bartow County armed robberies of the Texaco convenience store on February 12, 2009, the second Texaco convenience store on February 17, 2009, and the Kangaroo convenience store on February 18, 2009, and he pled guilty to several offenses relating to those robberies in Bartow County. Dixon was indicted, tried, and convicted in Bartow County of the armed robberies of the Kangaroo convenience store on December 21, 2008, the Bojangles restaurant on January 27, 2009, the Texaco convenience store on February 12, 2009, and the second Kangaroo convenience store on February 18, 2009.[4]

*The Bench Trial for the Cherokee County Robbery.* After he was convicted of the armed robberies in Bartow County, Dixon was tried for the Cherokee County robbery and for the aggravated assault of one of the store employees there whom he

---

[4] Dixon was indicted and tried for the armed robbery of the Texaco on February 17, 2009, but the trial court entered a directed verdict of acquittal on that count because the State had misnamed the store in the indictment, causing a fatal variance between the allegata and the probata. Dixon also was indicted, tried, and acquitted of the attempted armed robbery of an adult novelty store in Bartow County.

threatened with the knife. He elected to be tried in a bench trial, where the trial court permitted the State to introduce similar transaction evidence of the five Bartow County robberies for the sole purpose of proving Dixon's identity as the perpetrator of the Cherokee County robbery. After receiving all of the evidence, the trial court found Dixon guilty of the charged offenses, but noted that the "similar transactions [were] almost a distraction" in light of the evidence of the "armed robbery itself . . . and the circumstances of the arrest." The trial court subsequently conducted an evidentiary hearing and denied Dixon's motion for new trial. This appeal ultimately followed.

1. As an initial matter, Dixon's appellate brief purports to incorporate by reference arguments made by counsel in briefs and hearings before the trial court.

> This practice is not approved by this Court and we decline to look in the record for matters which should have been set forth in the brief. Moreover, if we were to permit this practice a party could evade entirely the page limitations on briefs established in our Rules. See Court of Appeals Rule 24 (f). Accordingly, we have limited our review of [Dixon's] arguments to those actually made in [his] appellate brief.

(Punctuation and footnote omitted.) *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 815 (1) (670 SE2d 469) (2008).[5]

2. Dixon maintains that the trial court committed reversible error by admitting similar transaction evidence of the five Bartow County robberies.[6] We disagree.

> To obtain admission of similar transaction evidence, the State must show [by a preponderance of the evidence] (1) that it seeks to introduce the evidence for a proper purpose; (2) that there is sufficient evidence that the accused committed the independent offense or act; and (3) that sufficient similarity exists between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

*Alvarez v. State*, 309 Ga. App. 462, 464 (2) (710 SE2d 583) (2011), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). See *Kinder v. State*, 284 Ga.

---

[5] Dixon's appellate brief also contains no pagination, virtually no citations to the record, and is cast in an improper font size. See Court of Appeals Rules 1 (c), 24 (b), (e), and 25 (a) (1). Given the numerous shortcomings of his brief, we would be authorized to dismiss it. See Court of Appeals Rule 7. However, the State has provided sufficient citations to the record in its brief, and we therefore will address the merits of Dixon's appeal to the extent possible.

[6] Because the present case was tried in July 2011, the new Georgia Evidence Code does not apply to the admission of the similar transaction evidence. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date." See also OCGA § 24-4-404 (b) (2013).

148, 151 (3) (663 SE2d 711) (2008). We apply the clearly erroneous standard when reviewing a trial court's factual findings on the issue of similarity or connection of the similar transaction evidence, and we review the trial court's decision whether to admit the similar transaction evidence for an abuse of discretion. See *Reed v. State*, 291 Ga. 10, 13-14 (3) (727 SE2d 112) (2012). Moreover, "the court in a bench trial has broader discretion in admitting similar transaction evidence than in jury trials." *Bazin v. State*, 299 Ga. App. 875, 880 (6) (683 SE2d 917) (2009), quoting *Lloyd v. State*, 259 Ga. App. 636, 640-641 (2) (577 SE2d 854) (2003).

On appeal, Dixon specifically challenges the admission of the five Bartow County robberies on the ground that they were not unusual and distinctive enough and were not sufficiently similar to the charged offense to be admissible to prove his identity as the perpetrator of the charged offense.

> A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies, or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.

11

(Citations and punctuation omitted.) *Cole v. State*, 216 Ga. App. 68, 70 (1) (453 SE2d 495) (1994). See *Jones v. State*, 236 Ga. App. 330, 333 (1) (c) (511 SE2d 883) (1999). Nevertheless, even if the independent crime and the charged crime are "essentially dissimilar" in their factual details, the independent crime is properly admitted to prove the identity of the perpetrator if there is a "logical connection" linking it to the charged crime such that proof of the former tends to prove the latter. *Williams v. State*, 295 Ga. App. 249, 251 (1) (671 SE2d 268) (2008). See *Lampkin v. State*, 277 Ga. App. 237, 239 (626 SE2d 199) (2006) (emphasizing that "the State must demonstrate a sufficient connection *or* similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter" before the independent offense or act can be introduced to prove identity) (punctuation and footnote omitted; emphasis in original).

(a) *The Convenience Store Robberies.* The trial court acted within its discretion in admitting evidence of the armed robberies of the four Bartow County convenience stores. There was evidence that these four armed robberies, like the Cherokee County robbery, occurred late at night or early in the morning when no customers were in the stores; involved stores that were located near Interstate 75; involved a perpetrator wearing a mask, hoodie, gloves, jeans, and white shoes; and, most significantly,

involved the same perpetrator also wearing a dark backpack with a distinctive white design on it that he used for collecting cash from the registers. In light of these similarities, the trial court, sitting as the trier of fact in a bench trial, did not err in concluding that the four armed robberies of the Bartow County convenience stores were sufficiently similar to the armed robbery of the Cherokee County convenience store to be admitted to prove Dixon's identity as the perpetrator of the latter robbery. See *Griggs v. State*, 251 Ga. App. 430, 431-432 (1) (554 SE2d 569) (2001); *King v. State*, 214 Ga. App. 311, 315-316 (5) (447 SE2d 645) (1994). Cf. *Ellerbee v. State*, 247 Ga. App. 46, 50-51 (2) (a) (542 SE2d 146) (2000) (defendant's prior conviction of selling cocaine was relevant and admissible to prove that the defendant was the seller of the cocaine in the current trial, where the defendant sold the drugs in the same distinctive "green plastic wrapping").[7]

---

[7] That the Bartow County convenience store robberies involved use of a handgun (or what looked like a handgun) rather than a knife, and involved two rather than one perpetrator, did not preclude the trial court from finding that the robberies were nevertheless sufficiently similar to the Cherokee County robbery in other critical respects to warrant their admission. See *Phillips v. State*, 287 Ga. 560, 564 (4) (697 SE2d 818) (2010); *Cornell v. State*, 289 Ga. App. 52, 54 (656 SE2d 191) (2007). In reviewing whether sufficient similarities exist, courts "must focus on the similarities between the two acts rather than the dissimilarities," and the "crimes need not be carbon copies of one another to be admissible." *Gardner v. State*, 273 Ga. 809, 811 (2) (546 SE2d 490) (2001).

Additionally, evidence that the robber used the same distinctive backpack in the Bartow County and Cherokee County robberies logically connected them to one another. Given this logical connection, the trial court did not err in admitting evidence of the four armed robberies of the Bartow County convenience stores to prove that Dixon was the perpetrator of the Cherokee County robbery. See *Williams*, 295 Ga. App. at 251 (1); *Lampkin*, 277 Ga. App. at 239.

(b) *The Bojangles Restaurant Robbery.* The admissibility of the armed robbery of the Bojangles restaurant in Bartow County presents a closer question. As to that crime, the manager of the restaurant testified that two unidentified masked perpetrators entered the restaurant through a back entrance after it closed and forced him at gunpoint to open the store safe and hand over the cash inside. There was no evidence that either one of the perpetrators used a backpack, distinctive in design or otherwise, for collecting the stolen cash. Nevertheless, the trial court did find some similarities, supported by the evidence, between the Bojangles restaurant robbery and Cherokee County robbery, including the timing of the robberies and evidence indicating that the perpetrators were familiar with the area and the businesses robbed.

We need not resolve whether the trial court erred in admitting evidence of the Bojangles armed robbery as a similar transaction. It is axiomatic that harm, as well

14

as error, must be shown for the improper admission of similar transaction evidence to justify reversal of a conviction. *Bright v. State*, 314 Ga. App. 589, 594 (1) (b) (725 SE2d 327) (2012). If it is highly unlikely that admission of the similar transaction evidence contributed to the verdict, then admission of the evidence is harmless. Id. Pretermitting whether the Bojangles armed robbery was admissible as a similar transaction, we find it highly unlikely that its admission contributed to the verdict in this bench trial, in light of the four armed robberies that were properly admitted as similar transactions. *Wright v. State*, 304 Ga. App. 651, 654 (3) (697 SE2d 296) (2010). Thus, any potential error in its admission was harmless. Id.

2. Dixon contends that the trial court erred in denying his motion for new trial because his trial counsel rendered ineffective assistance in several respects. But although Dixon called his trial counsel to testify at the hearing on his motion for new trial, Dixon failed to raise any specific instances of ineffective assistance in his motion or at the hearing. Indeed, at the end of the hearing, the trial court said, "Well, there doesn't appear to be any real suggestion of ineffective counsel as far as I can see." Accordingly, Dixon's ineffective assistance claims are waived on appeal. See *Soloman v. State*, 294 Ga. App. 520, 524 (2) (b), n. 16 (669 SE2d 430) (2008).

*Judgment affirmed. McFadden and McMillian, JJ., concur*.