[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15528
Non-Argument Calendar

_____

D. C. Docket No. 1:09-cr-00134-JOF-JFK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CURTIS JEROME BROWN, JR.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 11, 2012)


Before HULL, EDMONDSON and BLACK, Circuit Judges.


PER CURIAM:

Curtis Jerome Brown, Jr., appeals his convictions for making a false entry in a record or document, 18 U.S.C. § 1519 ("Count Two"), engaging in misleading conduct, 18 U.S.C. § 1512(b)(3) ("Count Four"), making false statements to a federal agent, 18 U.S.C. § 1001 ("Count Five"), and obstructing, influencing or impeding a federal grand jury, 18 U.S.C. § 1503 ("Count Nine"). Brown was sentenced to 27 months' imprisonment for each count, to run concurrently. No reversible error has been shown; we affirm.

Brown worked as a detention officer at the Fulton County Jail in Atlanta, Georgia. His convictions stem from incidents involving two different inmates. On Count Two, Brown was convicted of knowingly falsifying and making a false entry in an incident report about the use of force against inmate M.A. with the intent to impede, obstruct, and influence a federal investigation. Counts Four, Five, and Nine arose from Brown's attempts -- in an incident report, his statements to federal agents, and in his grand jury testimony -- to falsify and conceal information about his physical encounter with inmate R.G. before R.G.'s in-custody death.

Brown raises four issues on appeal. First, he challenges the admission of evidence that R.G. died as both irrelevant under Federal Rule of Evidence 402 and unduly prejudicial under Rule 403. We review the district court's decision to admit

2

or exclude evidence for abuse of discretion. United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992).

Evidence that R.G. died was relevant to Counts Four, Five, and Nine against Brown, all of which charged Brown with concealing information about his physical encounter with R.G. moments before R.G.'s death. In particular, R.G.'s death helps put Brown's offenses into context and explains Brown's potential motive to lie. See id. (stating that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if . . . [it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."). Evidence that R.G. died was also relevant to explain why R.G. did not testify about his encounter with Brown. See United States v. Accentturo, 966 F.2d 631, 637 (11th Cir. 1992) (concluding that evidence of the victim's death was relevant to explain why the victim did not testify at trial).

Even when evidence is relevant, a district court may still exclude it under Rule 403 if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed.R.Evid. 403. Rule 403 is an extraordinary remedy that should be invoked only sparingly. United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010). Thus, "'in reviewing issues under Rule 403, we look at the

3

evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. "Only if the decision to admit evidence over a Rule 403 challenge is unsupportable when the evidence is viewed in the light most supportive of the decision will we say that the decision constitutes an abuse of discretion." United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003).

We cannot say that the district court abused its discretion in admitting evidence that R.G. died. The evidence was probative to the charged offenses; and the district court and both lawyers minimized the prejudicial impact of the evidence by explaining to the jury that Brown was not charged with causing R.G.'s death, with assaulting R.G., or with using excessive force. Viewing the evidence in the light most favorable to its admission, the evidence that R.G. died was not subject to exclusion under Rule 403.

Next, Brown argues that the district court erred by admitting testimony about the cause of R.G.'s death, alleging that the testimony was both irrelevant and unduly prejudicial. Because Brown failed to object on these grounds at trial, our review is only for plain error. See United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007).

4

At trial, the prosecutor elicited testimony that the medical examiner's preliminary opinion about the cause of R.G.'s death was different from the ultimate conclusion that R.G. died of natural causes.[1]  Even if we assume -- without deciding -- that the district court committed plain error in admitting this testimony, Brown has failed to demonstrate that such error affected his substantial rights.  "For an error to affect substantial rights, . . . '[i]t must have affected the outcome of the district court proceedings.'"  Id. at 1343 n.7.  Substantial evidence supports the jury's guilty verdicts and nothing evidences that the brief testimony about the cause of R.G.'s death affected the jury's decision.

About Counts Two, Four, and Five, Brown argues that the district court violated Garrity v. New Jersey, 87 S. Ct. 616 (1967), by admitting into evidence the incident reports that he prepared about his encounters with M.A. and R.G. and his statements to federal agents.  In Garrity, the United States Supreme Court concluded that, absent a knowing and voluntary waiver, incriminating statements made by law enforcement officers under threat of termination for remaining silent are inadmissible in later criminal proceedings.  87 S. Ct. at 620.

---

[1]The challenged testimony revealed only that the medical examiner's preliminary findings differed from the cause of death reported on R.G.'s death certificate.  The substance of the medical examiner's preliminary findings were not disclosed to the jury.

5

But we have concluded that, "[a]lthough an accused may not be forced to choose between incriminating himself and losing his job under Garrity, neither Garrity nor the Fifth Amendment prohibits prosecution and punishment for false statements or other crimes committed during the making of Garrity-protected statements." United States v. Veal, 153 F.3d 1233, 1243 (11th Cir. 1998) (emphasis in original). "Giving a false statement is an independent criminal act that occurs when the individual makes the false statement; it is separate from the events to which the statement relates, the matter being investigated." Id. (emphasis in original). Because Brown was prosecuted for making misleading statements in his incident reports and in his interview with federal agents -- not for the conduct described in those statements -- he is unentitled to protection under Garrity or the Fifth Amendment. Thus, the district court's admission of Brown's incident reports and statements to federal agents was proper.

Brown also contends that the prosecutor engaged in prosecutorial misconduct by failing to correct a government witness's false material testimony. Chantae Taylor, who was on duty at the jail during the R.G. incident, testified at both Brown's trial and in a related case about what she witnessed that night. Comparing Taylor's testimony at both trials, Brown identifies six inconsistencies that he contends consist

of perjured statements on material matters.[2]  Because Brown failed to object to Taylor's testimony at trial, we review this issue only for plain error.  See Edouard, 485 F.3d at 1343.

"To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material."  United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010), cert. denied, 131 S. Ct. 1599, 1600 (2011).  "Perjured testimony is defined as testimony 'given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'"  Id.  "The false testimony is deemed material if there is a reasonable likelihood the false testimony could have affected the judgment of the jury."  Id.

While aspects of Taylor's testimony were inconsistent with her testimony in an earlier related case, nothing evidences that Taylor willfully intended to provide false testimony or that the prosecutor knowingly presented perjured testimony.  Moreover, Brown has failed to demonstrate that Taylor's alleged false statements

---

[2]In particular, Brown contends that Taylor provided conflicting testimony about these six details: (1) whether she called Brown or asked Brown in person to help with R.G.; (2) when she first approached R.G.'s cell; (3) what happened when Brown and another officer entered R.G.'s cell; (4) how and when R.G.'s cell window shattered; (5) how R.G. was acting during mealtime; and (6) when R.G. was found unresponsive.

were material.  Despite the discrepancies in Taylor's testimony, she -- and a second government witness -- testified consistently that Brown entered R.G.'s cell and used physical force against him.  Because the charges against Brown accused Brown of concealing that he had entered R.G.'s cell and that he had any contact with R.G. in the moments leading up to R.G.'s death, the exact details of Brown's encounter with R.G. are immaterial to the charges against Brown.  Thus, even to the extent that Taylor testified falsely about the details of that encounter, her false testimony would not have affected the jury's outcome.

AFFIRMED.