## S13A0021. CLARKE v. THE STATE.
(737 SE2d 575)

HINES, Justice.

Elkin Clarke appeals his convictions for the malice murder of Michael Toles and the simple assault of Aisha Albritton. He challenges the sufficiency of the evidence and the trial court's refusal to remove a potential juror for cause. For the reasons that follow, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On December 10, 2004, Elkin Clarke and Michael Toles were selling candy in downtown Atlanta. Georgia State University students Aisha Albritton and Lora Bock were downtown meeting for lunch. Albritton and Bock observed Clarke, who was dressed in a Santa coat and hat, lift up a large board and hit Ms. Toles in the back of her head. Clarke struck Toles twice more while she was lying motionless on the ground. Albritton attempted to confront Clarke, and he turned and started toward her. Albritton backed away from Clarke, who was still menacingly holding the board. Clarke dropped the board and ran into a nearby restaurant, got a plastic bag, took off his Santa trappings, grabbed the boxes of candy he had been selling, and ran toward the closest MARTA station.

Police received a call about the attack, and an officer who had seen Clarke earlier in the day knew Clarke's general location, and immediately headed in that direction. The officer saw and detained Clarke, and the two walked back to the crime scene. The officer observed the 74-year-old Toles lying unconscious on the ground with blood coming out of her ear and nose. An ambulance was summoned, and the officer confirmed with the gathered witnesses that Clarke was the one who struck the victim. Toles died on January 21, 2005.

1. Clarke contends that the evidence was insufficient to establish that his actions were the cause of Toles's subsequent death. Citing excerpts of testimony from two physicians who treated Toles after she was hospitalized on December 10, 2004, following Clarke's attack,

---

[1] The criminal acts occurred on December 10, 2004. On November 1, 2005, a Fulton County grand jury returned an indictment against Clarke charging him with malice murder, felony murder while in the commission of aggravated assault, aggravated assault, aggravated battery, and simple assault. He was tried before a jury January 28 – February 7, 2008, and found guilty of all charges. Clarke was sentenced to life in prison for malice murder and a concurrent 12 months in prison for simple assault. The felony murder verdict stood vacated by operation of law, and the remaining charges merged with the malice murder for the purpose of sentencing. A motion for new trial was filed on February 11, 2008, and amended motions for new trial were filed on August 20, 2010, January 28, 2011, and April 6, 2011. The motion for new trial, as amended, was denied on April 20, 2011. A notice of appeal was filed on May 20, 2011, and the case was docketed to this Court's January 2013 term. The appeal was submitted for decision on the briefs.

and the doctor who supervised her autopsy, he maintains that there was no evidentiary connection between his admittedly striking Toles and her death, and that her pre-existing medical conditions led to her demise. Clarke further complains that the medical examiner's finding of the cause of death was based upon mere speculation, and his expression of belief that the manner of death was a homicide was unsupported by the evidence and was "a clear and impermissible violation of expressed opinion testimony" regarding the ultimate issue before the jury.

An injury is the legal proximate cause of death when either the injury itself is the sole proximate cause of the death, the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death, or the injury materially accelerated the death, although the death was proximately occasioned by a pre-existing cause. *Ward v. State*, 238 Ga. 367, 369 (233 SE2d 175) (1977). See, e.g., *Bishop v. State*, 257 Ga. 136 (365 SE2d 503) (1987) (conviction of malice murder upheld in challenge that State did not demonstrate beyond a reasonable doubt a direct causal connection between the inflicted wound from a spring gun trap and the victim's death when the victim ultimately died from a blood clot).

Here, there was evidence that Toles was unconscious and unresponsive upon arrival at the hospital and exhibited obvious wounds to her head. Medical tests revealed that Toles had fractures to her jaw and the temporal bone of her skull. Because of the broken jaw, Toles's teeth were wired shut and a feeding tube was inserted into her stomach. Even though further tests indicated that Toles had previously had some minor strokes, the immediate cause of medical concern was the severe blows to her head sustained in the attack by Clarke. After the trauma team stabilized Toles, she was transferred to an acute care nursing facility. Toles had difficulty breathing due, in part, to her mouth being wired shut, so a tracheotomy had to be performed on her. Doctors discovered that she was also suffering from severe sepsis, necrotic bowels, a urinary tract infection, shock, and respiratory failure; however, her condition was exacerbated by the fact that she had been bedridden since the time of the attack. The victim's advanced age contributed to her inability to recover from the attack. And, even though her autopsy revealed other medical conditions including cardiovascular disease, the medical examiner determined that the cause of Toles's death was delayed complications from the blunt force trauma to her head; he testified that as a 74-year-old woman, Toles had "a lot of natural disease processes," but that her head injury was the underlying process that "started the ball rolling" in a "continuous downhill course," culminating in her death.

Contrary to Clarke's assertion, the medical examiner's conclusion about the cause of death was not premised upon speculation; he testified in great detail about the factual basis for his opinion of the cause of death of the victim. Further, the medical examiner's testimony about the manner of the victim's death being a homicide did not improperly invade the province of the jury on the ultimate issue of criminal liability. *Sharpe v. State*, 291 Ga. 148, 150 (2) (728 SE2d 217) (2012).

The evidence, including that of proximate causation, was sufficient to enable a rational trier of fact to find Clarke guilty beyond a reasonable doubt of the crimes for which he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Clarke also contends that the trial court abused its discretion in refusing to strike for cause a member of the venire, potential juror #21 ("Juror #21"). He maintains that Juror #21 was uncertain about her ability to be fair and that her opinion remained fixed in this regard. However, the transcript of voir dire reveals otherwise.

Juror #21, who related that she was an ordained minister with a senior citizen ministry and volunteered in a nursing home, stated the following. When asked if she could be fair in basing a decision on the presented evidence, she replied "I would hope I could be fair" but later observed that "sometimes your heart, your feelings can interfere with your judgment." However, shortly thereafter, when asked if she could be a fair and impartial juror to both sides in the case, she replied, "Yes, I think I'm a fair person." And, after defense counsel asked her if she thought that her heart and emotions could get in the way of her judgment, Juror #21 said that while she could not say definitely because she had not been in this situation before, she "would hope not."

Whether to strike a juror for cause is within the sound discretion of the trial court, and its exercise of that discretion is not to be interfered with absent a manifest abuse. *Poole v. State*, 291 Ga. 848 (734 SE2d 1) (2012). The potential juror's opinion of her qualification to serve is not determinative of that question. Id. In order for a potential juror in a criminal case to be excused for cause on the statutory ground that her ability to be fair and impartial is substantially impaired, the party seeking the disqualification must show that the person holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the potential juror will not be able to set it aside and decide the case on the evidence or the court's charge on the evidence. Id. Indeed, it is not isolated responses, but the " 'final distillation' " of a prospective juror's voir dire that determines whether that juror is qualified to serve. *Raulerson v. State*, 268 Ga. 623, 629 (3)

(491 SE2d 791) (1997). In fact, the law presumes that potential jurors are impartial, and that is why the burden of proving partiality is on the party seeking to have the potential juror disqualified. *Poole v. State*, supra.

Clarke does not carry the burden in this case. Although Juror #21 initially expressed some reservations about her impartiality, she ultimately confirmed that she did not want any emotionality to impede her judgment and that she was a fair person. Under these facts, there was no manifest abuse of the trial court's discretion in not excusing Juror #21 for cause. *Poole v. State*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 7, 2013.

*Dell Jackson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Peggy R. Katz, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.