**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 17, 2021

# In the Court of Appeals of Georgia

A21A0186. EVANS v. THE STATE.

McFADDEN, Chief Judge.

After a jury trial with multiple co-defendants, Dana Evans was convicted of conspiracy to violate the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act, see OCGA § 16-14-1 et seq., and making false statements to a Georgia Bureau of Investigation ("GBI") agent, see OCGA § 16-10-20. She appeals, challenging the denial of her motion for a directed verdict of acquittal; but there was sufficient evidence supporting the jury's verdict. Evans also challenges the denial of her motion to dismiss the indictment, citing *Garrity v. New Jersey*, 385 U. S. 493 (87 SCt 616, 17 LE2d 562) (1967), which bars evidence obtained from public employees by threatening their employment; but *Garrity* does not support her argument and the trial court did not abuse its discretion in denying the motion to dismiss. Evans further

claims that the trial court erred in denying her severance motion; but she has not shown a denial of due process. She also claims two errors with regard to the jury; but her jury pool challenge fails because she did not meet her burden of providing sufficient evidence of the racial composition of the relevant jury list, and her claim that two jurors should have been excused for cause fails because she waived the claim as to one of the jurors and did not show an abuse of discretion as to the other. Evans has enumerated numerous other claims of error, including various evidentiary rulings; but several of the claims were not properly preserved for appellate review[1] and others do not amount to harmful error. Because Evans has failed to show reversible error, we affirm.

1. *Facts and Procedural posture.*

---

[1]It appears from the briefs and cited parts of the record that the trial court agreed to treat an objection by one defendant as an objection for all defendants unless someone opted out of the objection. Although this is not the typical method for preservation of error amongst co-defendants, since it appears that this procedure was allowed by the trial court, we will accept it for purposes of review in this case. Compare *Whatley v. State*, 342 Ga. App. 796, 798 (1) (805 SE2d 599) (2017) (appellant waived alleged error by failing to raise own objection or join in co-defendant's objection); *Maxwell v. State*, 267 Ga. App. 227, 229 (3) (599 SE2d 228) (2004) ("it is well established that an issue raised by a co-defendant at trial does not preserve the issue for another co-defendant who does not join in the objection").

The state indicted 35 Atlanta Public School ("APS") employees, including Evans, for conspiracy to violate the Georgia RICO Act and other offenses arising out of alleged cheating on standardized testing of students.[2] Evans and 11 other defendants were jointly tried before a jury.[3] After more than six months of trial, the jury found Evans guilty of conspiracy to violate the RICO Act and making false statements to a GBI agent, but found her not guilty of three other counts of making false statements or writings.[4] The trial court sentenced Evans as a first offender, imposing a total sentence of five years, with one year to be served in confinement and four years to be served on probation. Evans moved for new trial, the motion was denied, and this appeal followed.

2. *Directed verdict of acquittal.*

Evans claims that the trial court erred in denying her motion for a directed verdict of acquittal. The claim is without merit.

---

[2]Additional facts are set forth in *Cotman v. State*, 342 Ga. App. 569 (804 SE2d 672) (2017).

[3]Of those defendants who did not go to trial, 21 entered guilty pleas and two passed away.

[4]The jury found another defendant not guilty of any charges, found the other ten defendants guilty of conspiracy to violate the RICO Act, and found some of those defendants guilty of additional offenses.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. When evaluating the sufficiency of evidence to support a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. On appeal, this [c]ourt does not re-weigh the evidence or resolve conflicts in testimony, but instead defers to the jury's assessment of the weight and credibility of the evidence.

*Doricien v. State*, 310 Ga. 652, 653-654 (1) (853 SE2d 120) (2020) (citations and punctuation omitted).

So viewed, the evidence showed that Evans was the principal of Dobbs Elementary School and allowed cheating on standardized tests to take place at Dobbs in order to meet certain testing targets.

As with most other schools within APS, the pressure to meet [these] Targets at Dobbs was tremendous, and the principal would stress at every staff meeting that Targets had to be met by any means necessary. In fact, the principal was so adamant about meeting these goals that she would tell Dobbs's teachers that they should find new professions if they were unable to make Targets.

*Cotman v. State*, 342 Ga. App. 569, 576 (804 SE2d 672) (2017). The evidence showed that Evans failed to stop the cheating in order to meet the testing targets, prevented others from discussing it, threatened teachers, and retaliated against at least

4

one person for speaking to the GBI about it. Evans herself falsely told GBI agents that she was unaware of any cheating at Dobbs.

In challenging the denial of a directed verdict of acquittal as to the offenses of which she was convicted, Evans has pointed to purported conflicts in the evidence supporting her defense. But "[a]ny conflicts or inconsistencies in the evidence [were] for the jury to resolve." *Walker v. State*, 348 Ga. App. 273 (1) (821 SE2d 567) (2018) (citation omitted). The trial court did not err in denying Evans' motion for a directed verdict of acquittal since the evidence did not demand a verdict of not guilty and "the evidence was sufficient to support [her] convictions[.]" *Cotman*, supra at 586 (2). See OCGA § 17-9-1 (a) (directed verdict of acquittal authorized where there is no conflict in the evidence and the evidence demands a verdict of not guilty).

3. *Motion to dismiss indictment.*

Evans contends that the trial court erred in denying her motion to dismiss the indictment because her statements to investigators were not voluntary and were obtained in violation of *Garrity v. New Jersey*, supra. We disagree.

*Garrity* bars evidence obtained from public employees by threatening their employment.

5

In *Garrity*, New Jersey police officers were investigated for allegedly fixing traffic tickets. The officers were informed that they could exercise their Fifth Amendment privilege against self-incrimination if they wished, but doing so would cost them their jobs under a New Jersey statute which required all public employees to cooperate with investigations or forfeit their positions. The officers cooperated with the investigation but were prosecuted. They moved to suppress their statements as involuntary and coerced. The Supreme Court held that statements obtained under threat of removal from office cannot be used in subsequent criminal proceedings and reversed the New Jersey Supreme Court's decision allowing the officers' statements into evidence.

*State v. Stinson*, 244 Ga. App. 622, 624 (536 SE2d 293) (2000) (citation and punctuation omitted). Our state Supreme Court has "held that trial courts should apply a 'totality of the circumstances' analysis to the question whether [such] statements made under threat of termination should be excluded in a criminal proceeding." *Georgia Peace Officers Standards & Training Council v. Anderson*, 290 Ga. App. 91, 93 (1) (658 SE2d 840) (2008). See *State v. Thompson*, 288 Ga. 165, 167-169 (702 SE2d 198) (2010) (affirming grant of defendant's motion to suppress statements due to *Garrity* violation); *Zeigler v. State*, 350 Ga. App. 716, 719-723 (1) (830 SE2d 256) (2019) (reversing trial court's denial of motion to suppress statements obtained in violation of *Garrity*); *State v. Stanfield*, 290 Ga. App. 62, 66 (2) (658 SE2d 837) (2008) (under *Garrity*, coerced statements could not be used at trial).

6

Here, Evans claims protection under *Garrity* that the case does not afford. Rather than claiming that her statements should have been suppressed at trial, Evans argues that the indictment should have been dismissed. But "[d]ismissal of an indictment is an extreme sanction, used only sparingly as a remedy for unlawful government conduct." *Olsen v. State*, 302 Ga. 288, 294 (2) (806 SE2d 556) (2017) (citation and punctuation omitted). See *Wilcox v. State*, 250 Ga. 745, 755-756 (4) (301 SE2d 251) (1983) (dismissal of indictment is generally disfavored as the remedy for government misconduct should be tailored to the injury suffered); *Robinson v. State*, 200 Ga. App. 515, 517 (1) (408 SE2d 820) (1991) (dismissal is an extreme sanction which should be infrequently utilized). Evans has failed to show that the extreme sanction of dismissal of the indictment was an appropriate remedy tailored to the alleged injury of a *Garrity* violation.

In arguing for dismissal as an appropriate remedy, Evans has conflated involuntary statements under *Garrity* with immunized testimony. *Garrity* does not hold, as Evans suggests, that coerced statements by public employees are treated as formal immunized statements for use and derivative use immunity. *Garrity* makes no mention of use or derivative use immunity and holds only that statements obtained from public officers under threat of removal from office are involuntary and

7

inadmissible. See *Garrity*, supra at 500; *State v. Aiken*, 282 Ga. 132, 134 (1) (646 SE2d 222) (2007) (Supreme Court in *Garrity* concluded that the threat of a job loss was sufficient to render the statement involuntary and inadmissible at subsequent criminal proceeding). Indeed, the Court in *Garrity* expressly stated that "[n]o immunity was granted, as there is no immunity statute applicable in these circumstances." *Garrity*, supra at 495.

Evans also cites other federal cases as support for her assertion that the indictment in this case is subject to dismissal for the purported *Garrity* violation. But her reliance on those cases is misplaced since they did not involve involuntary statements under *Garrity* and instead involved immunized testimony before grand juries that had been compelled by the grant of immunity. See *Kastigar v. United States*, 406 U. S. 441 (92 SCt 1653, 32 LE2d 212) (1972) (government could compel grand jury testimony from witnesses who had invoked privilege against self-incrimination by giving them immunity from use and derivative use of the compelled testimony); *United States v. Semkiw*, 712 F2d 891 (3d Cir. 1983) (government compelled grand jury testimony by granting use immunity); *United States v. McDaniel*, 482 F2d 305 (8th Cir. 1973) (involving immunized grand jury testimony). And contrary to Evans' argument equating involuntary statements with immunized

8

grand jury testimony, the cases upon which she relies actually recognize the distinction between the two and explain that involuntary statements obtained in violation of the privilege against self-incrimination, while inadmissible at trial, do not bar prosecution. See *Kastigar*, supra at 461 (IV) ("A coerced confession . . . is inadmissible in a criminal trial, but it does not bar prosecution."); *United States v. North*, 920 F2d 940, 947 (II) (D. C. Cir. 1990) (recognizing citations to long line of Supreme Court cases deciding "that a defendant who has been compelled to incriminate himself is entitled only to have that evidence suppressed at trial and not to have it excluded from consideration by the grand jury") (punctuation omitted). Moreover, with regard to involuntary statements under *Garrity*, it has been expressly held that

> neither *Garrity* nor the Fifth Amendment prohibits prosecution and punishment for false statements or other crimes committed during the making of *Garrity*-protected statements. Giving a false statement is an independent criminal act that occurs when the individual makes the false statement; it is separate from the events to which the statement relates, the matter being investigated.

*United States v. Brown*, 492 Fed. Appx. 57, 60 (11th Cir. 2012) (citation, punctuation, and emphasis omitted).

Unlike the cases upon which she relies, Evans has not claimed that she was compelled to give immunized testimony before the grand jury and that the indictment was improperly based upon such testimony; rather, she relies solely on her allegedly involuntary statements under *Garrity*. In fact, she has made no showing by the record as to any of the evidence upon which the indictment was returned. "Generally, with regard to the efficacy of an indictment, no inquiry into the sufficiency or legality of the evidence is indulged." *Thomas v. State*, 331 Ga. App. 641, 656 (5) (771 SE2d 255) (2015) (citation and punctuation omitted). "A defendant seeking to quash an indictment has the burden to overcome the presumption that it was returned on legal evidence by showing there was no competent evidence upon which it could lawfully have been returned." *State v. Scott*, 344 Ga. App. 744, 746 (811 SE2d 457) (2018) (citation and punctuation omitted). In this case, Evans "has not carried [her] burden of showing that the evidence on which the indictment was returned was . . . wholly incompetent evidence." Id. at 747 (citations and punctuation omitted). See also *Williams v. State*, 244 Ga. App. 26, 27 (1) (535 SE2d 8) (2000) (rejecting argument that indictment should have been dismissed because the defendant "provided . . . no proof whatsoever that the indictment against her was based on wholly illegal evidence").

We review the trial court's ruling for an abuse of discretion. See *Smith v. State*, 323 Ga. App. 668, 671 (2) (747 SE2d 859) (2013); *State v. Brooks*, 301 Ga. App. 355, 359 (687 SE2d 631) (2009). "While trial courts are authorized to dismiss [indictments], this authority is not unlimited, and a trial court abuses its discretion when it interferes with the [s]tate's right to prosecute by dismissing an [indictment] without a legal basis to do so." *State v. Banks*, 348 Ga. App. 876, 880 (825 SE2d 399) (2019) (citation and punctuation omitted). Since Evans has not shown any legal basis upon which the trial court could have dismissed the indictment, we find no abuse of discretion.

4. *Severance.*

Evans argues that the trial court erred in denying her motion to sever her trial from that of the other defendants. But she "has not borne [her] burden to show reversible error by denial of due process." *Sims v. State*, 195 Ga. App. 631, 632 (1) (394 SE2d 422) (1990).

"OCGA § 17-8-4 provides that when two or more defendants are jointly indicted for a felony less than capital[, such] defendants may be tried jointly or separately in the discretion of the trial court." *Majors v. State*, 203 Ga. App. 139, 140 (1) (416 SE2d 156) (1992) (citation and punctuation omitted).

11

It is well-settled that a trial court has broad discretion to grant or deny a motion for severance. In ruling on a severance motion, the trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing that a joint trial would lead to prejudice and a consequent denial of due process.

*Davis v. State*, 304 Ga. 547, 552 (3) (820 SE2d 10) (2018) (citation and punctuation omitted).

Although Evans has pointed to the length of the trial and the number of defendants, she has not identified evidence against another defendant that possibly was considered against her. See *Martin v. State*, 189 Ga. App. 483, 488 (3) (c) (376 SE2d 888) (1988) (affirming denial of motion for severance in RICO case where appellant did not establish that his conviction was based on "spillover" from other defendants). And while she has cited an evidentiary dispute with her co-defendants, she has not articulated specific defenses antagonistic to hers at trial. Indeed, mere "[a]ntagonism between co-defendants . . . is not enough in itself to require severance, rather appellant must also demonstrate that he was harmed by the failure to sever." *Dennard v. State*, 263 Ga. 453, 455 (5) (435 SE2d 26) (1993), overruled in part on

12

other grounds in *Sanders v. State*, 281 Ga. 36, 37 (1) (635 SE2d 772) (2006). Evans "has failed to carry [her] burden of making a clear showing that the joint trial was prejudicial and a denial of due process[, so] we conclude that the trial court did not abuse its discretion in denying [her] motion to sever." *Dorsey v. State*, 331 Ga. App. 486, 491 (3) (771 SE2d 167) (2015) (citations and punctuation omitted). See *Majors*, supra at 140 (1) (affirming denial of severance where appellant failed to show actual prejudice or denial of due process); *Sims*, supra at 631-632 (1) (insufficient showing of antagonistic defenses or spillover of evidence); *Beal v. State*, 175 Ga. App. 234, 237 (2) (333 SE2d 103) (1985) (no error in denying severance in conspiracy case).

5. *Jury pool.*

Evans claims that the jury pool was not a fair cross-section of the community due to underrepresentation of African-Americans. To prevail on such a jury pool composition challenge, Evan must show:

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in jury pools is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Morrow v. State*, 272 Ga. 691, 692 (1) (532 SE2d 78) (2000) (punctuation omitted).

13

Evans refers to evidence of potential jurors who answered a questionnaire, but she has not cited any evidence on the racial composition of the relevant county master jury list. Evans therefore "has failed to carry [her] burden because [she has] present[ed] insufficient evidence to determine the racial composition of the [relevant] jury master list. . . . Accordingly, [Evans] is unable to meet [her] burden to make even a prima facie case for a fair cross-section claim [of underrepresentation]." *Shubert v. State*, 306 Ga. 490, 492 (2) (831 SE2d 826) (2019). See also *Bryant v. State*, 288 Ga. 876, 879 (2) (708 SE2d 362) (2011) (to prove a prima facie jury pool composition violation, defendant is required to show that the allegedly excluded group was actually underrepresented); *Morrow*, supra at 695 (1) (composition of jury pool did not violate constitution where defendant presented unreliable evidence that group was underrepresented on county jury lists). Under these circumstances, Evans has "failed in producing [enough] evidence to establish a statistical or factual basis of lack of proportional[ity] to warrant a grant of a challenge to the array or to the composition of the [jury pool]." *Johnson v. State*, 179 Ga. App. 467, 468 (5) (346 SE2d 903) (1986) (insufficient evidence of systematic exclusion based on race).

6. *Jurors 89 and 111.*

14

Evans complains that the trial court erred in failing to strike jurors 89 and 111 for cause. As to juror 89, Evans concedes that she did not seek to remove the juror for cause. "Because [Evans] did not make a request to strike the juror for cause, the issue was waived for ordinary appellate review. And plain error review is not available for this issue[.]" *Hill v. State*, 310 Ga. 180, 186 (3) (a) (850 SE2d 110) (2020) (citations omitted).

With regard to juror 111, the defense moved to excuse her because "she stated that she doesn't feel that some people should be defended by attorneys[.]" When the juror made that statement, she was explaining her answer on a questionnaire that if a defendant and an attorney know that the defendant is guilty, "they shouldn't waste their time." After giving her explanation, the juror affirmed that as a member of the jury she nevertheless would be able to evaluate the case and give a fair verdict to both sides. And she had previously testified that as a juror she would base her decision on the evidence and the law, and she would be fair to both the state and the defendants. In denying the motion to excuse juror 111, the court found that "overall she is a diligent person" who would follow instructions and decide the case fairly.

> Whether to strike a juror for cause lies within the sound discretion of the trial judge, and the trial court's exercise of that discretion will not be set aside absent a manifest abuse of discretion. For a juror to be

15

excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference.

*Collins v. State*, 308 Ga. 608, 612-613 (3) (842 SE2d 811) (2020) (citations and punctuation omitted). Here, the trial court did not abuse its discretion in refusing to strike the juror for cause since nothing in the record shows that the juror had expressed an opinion of guilt or innocence of Evans that was so fixed that she would be unable to decide the case based on the evidence presented and the law charged by the court. See *Clarke v. State*, 292 Ga. 305, 307-308 (2) (737 SE2d 575) (2013) (no abuse of discretion in not excusing juror where defendant failed to carry burden of proving that juror was not impartial).

7. *Denial of motion for mistrial.*

Evans enumerates that the trial court erred in denying her motion for a mistrial on the ground that a witness purportedly testified to the ultimate issue in the case. But pretermitting the question of whether the testimony actually concerned an ultimate

16

issue, Evans never moved for a mistrial and the motion that had been made by a co-defendant was withdrawn.

The transcript shows that the witness, who had taught at multiple APS schools over many years, testified: "I believe it was the culture at Atlanta Public School System, and it — in certain areas, it was data driven. It was — there was pressure to get scores by any means necessary." Counsel for one of the defendants then told the judge that he had a motion at the appropriate time, although he did not identify the type of motion or basis for it. After the witness' testimony had concluded, the court asked counsel about his unexplained motion. Counsel responded that he was withdrawing his motion for a mistrial because he did not think the testimony rose to the level of a mistrial, and no other defendant moved for a mistrial.

Because Evans made no motion for a mistrial on the ground that the witness had improperly testified to the ultimate issue in the case or on any other ground, her enumeration of error claiming that the trial court improperly denied such a motion presents nothing for review. See *Howie v. State*, 218 Ga. App. 45, 47 (6) (459 SE2d 179) (1995) (nothing preserved for appellate review of claim that trial court erred in failing to grant motion for a mistrial where defendant's attorney never moved for a mistrial). To the extent Evans attempts to challenge other trial court rulings, she "may

17

not use [her] brief to expand [her] enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors." *Wallace v. State*, 303 Ga. 34, 37-38 (2) (810 SE2d 93) (2018) (citation and punctuation omitted). Accord *Mims v. State*, 310 Ga. 853, 854 n. 2 (854 SE2d 742) (2021).

8. *Exhibits.*

Evans enumerates that the trial court erred in overruling defense objections to certain state exhibits. But she has failed to carry her burden of showing reversible error by the record.

(a) *Erasure analysis.*

Evans first argues that three exhibits showing erasure analysis for certain testing in Georgia were improperly admitted under the business records exception to the hearsay rule because they were not made in the regular course of business. See OCGA § 24-8-803 (6). But Evans has not pointed to any evidence in the record showing that the documents were not made in the regular course of business or indicated where in the voluminous record the actual exhibits are located. See *Monterey Community Council v. DeKalb County Planning Commission*, 281 Ga. App. 873, 875 (1) (637 SE2d 488) (2006) ("We have repeatedly held that it is not our job to cull the record on behalf of a party. The responsibility to locate and cite

18

evidence in the record rests with counsel, not this [c]ourt.") (citations and punctuation omitted). Instead, Evans has cited only to pages in the transcript where a defense attorney made such an objection at trial. So while Evans has shown where the issue was preserved for appellate review, she has not supported the factual premise of her appellate argument with any evidence of error in the record. See *Roberson v. State*, 300 Ga. 632, 636 (III) (797 SE2d 104) (2017) ("It is well established that the burden is on the party alleging error to show it by the record[.]") (citation and punctuation omitted). As a result, her claim of error amounts to a mere conclusory assertion that the exhibits were inadmissible. See *Cousins v. Tubbs*, 353 Ga. App. 873, 876 (1), n. 10 (840 SE2d 85) (2020) ("We also decline to address [appellant's] conclusory assertions . . . given his failure to identify any record evidence supporting these broad claims[.] ). See also *Thompson v. State*, 332 Ga. App. 204, 208-210 (1) (770 SE2d 364) (2015) (holding that report prepared by non-party store was not made in anticipation of prosecution and was thus admissible under OCGA § 24-8-803 (6)).

Moreover, even if Evans had made an adequate showing of error by the record, she has not argued, let alone shown, how she was harmed by the admission of the documents. "It is axiomatic . . . that harm as well as error must be shown to authorize a reversal by this court." *White v. State*, 315 Ga. App. 54, 60 (3) (a) (726 SE2d 548)

19

(2012) (citation and punctuation omitted). Accord *Rutledge v. State*, 245 Ga. 768, 771 (3) (267 SE2d 199) (1980) ("Harm as well as error must be established by an appellant in order to secure a reversal of [her] conviction."). Since Evans has "failed to show harm or prejudice, we [have no basis to] find . . . reversible error." *White*, supra (citation and punctuation omitted).

(b) *Failure to grant mistrial.*

Evans also argues the trial court should have granted a mistrial after the state attempted to tender a witness' settlement agreement with APS. The trial court sustained the defense objection to the exhibit, but denied its motion for a mistrial and instead gave a curative instruction to the jury. The defense did not renew its motion for a mistrial after the curative instruction, so denial of the motion was not preserved for appellate review. "[B]ecause [Evans] failed to renew [the] motion for mistrial after the trial court denied it and then took other corrective action, this argument is waived." *Smith v. State*, 302 Ga. 699, 702 (3) (808 SE2d 692) (2017).

9. *Leading questions.*

Evans argues that the trial court erred in allowing the state to treat two witnesses as hostile and ask them leading questions. But

20

the trial court has the discretion to allow leading questions on direct examination, when a witness is nervous, or reluctant, or hostile. When a witness demonstrate[s] a reluctance to tell what she [knows] about the [matter,] the trial court [has] great latitude to permit the assistant district attorney to treat the witness as a hostile witness and propound leading questions. It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal.

*Mitchell v. State*, 303 Ga. 491, 494 (2) (813 SE2d 367) (2018) (citations, punctuation, and emphasis omitted). This is not such a rare case as Evans has failed to show that the trial court abused its discretion in allowing the state to ask leading questions of reluctant or hostile witnesses. See *Issa v. State*, 340 Ga. App. 327, 341 (6) (796 SE2d 725) (2017) (trial court did not abuse its discretion in allowing state to ask leading questions of reluctant and nervous witness).

10. *Apology letters.*

Evans contends that the trial court allowed improper bolstering of state witnesses by permitting them, on direct examination and before their credibility had been attacked, to read apology letters to the jury that they had written as part of their guilty pleas. Evans has not identified these witnesses or specified the number of witnesses whose testimony she is challenging. Instead, she cites to pages in four different volumes of the trial transcript as examples of the alleged improper bolstering of witnesses.

21

But a review of the first two cited volumes of the transcript shows that after the trial court initially allowed a witness on direct examination to read her apology letter to the jury, the court changed its ruling during the cross-examination of that witness. The judge announced that he had reconsidered the defense objection, that he believed his prior ruling had been a mistake, and that he would not allow any further reading of such letters unless it became appropriate as a prior consistent statement after impeachment of a witness. The court declined a suggestion to charge the jury about the letter that had already been admitted, finding that the witness' credibility had subsequently been attacked so the letter was admissible. There was no objection to this ruling and Evans has not challenged it on appeal. Evans has thus failed to show that the trial court erred in ruling that letter was properly admitted due to the subsequent attack on the witness' credibility. See *Sterling v. State*, 267 Ga. 209, 213 (9) (477 SE2d 807) (1996) (rejecting claim of improper bolstering based on the introduction of a witness' taped statement before the witness testified at trial because the witness' credibility was eventually attacked and the tape was therefore properly admitted as a prior consistent statement); *Walters v. State*, 335 Ga. App. 12, 17 n. 4 (780 SE2d 720) (2015) ("Although some of these credibility attacks occurred after [the] prior consistent statement [had already been] introduced through [other]

22

testimony, a prior consistent statement may be admissible if the testifying witness's credibility was eventually attacked at a later point in the trial.") (citations and punctuation omitted).

The other transcript volumes cited by Evans show that two other state witnesses were extensively cross-examined by the defense; that on redirect examination of each witness the state introduced their respective apology letters; and that there were no objections to those letters. Despite the lack of objections, "with regard to rulings on evidence, [this] court is allowed to consider plain errors affecting substantial rights although such errors were not brought to the attention of the [trial] court." *Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (citations and punctuation omitted). Evans has not made any argument or showing that there was plain error affecting her substantial rights. See *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016) ("beyond showing a clear or obvious error, plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below") (citation and punctuation omitted).

11. *Discovery.*

Evans contends that the trial court erred in failing to grant a continuance, exclude evidence, or grant a mistrial after the state committed seven discovery violations. The contention is without merit.

(a) *Updated statement.*

The only purported discovery violation identified by Evans involved a witness who had initially said that the cheating had begun in a particular year, but then testified that he later told the prosecutor he believed it had actually begun in a different year. Outside the presence of the jury and the witness, the defense objected on the ground that the state had committed a discovery violation by failing to provide them with an updated witness statement and the defense suggested that the court could declare a mistrial or exclude the evidence. The judge directed that the witness be returned to the courtroom to be questioned about the matter. Upon questioning by the judge and defense counsel, the witness explained that the previous week he had told the prosecutor that the cheating started in 2005 instead of 2006. The judge then announced that the trial would resume and the witness was allowed to continue testifying before the jury.

As an initial matter, we note that while Evans makes the conclusory claim that the state committed a discovery violation, she has not cited any particular discovery

24

rule that was violated. It is not this court's role to speculate about the legal basis for an appellant's argument and "mere conclusory statements are not the type of meaningful argument contemplated by our rules." *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) (citations and punctuation omitted). We further note that Evans has not indicated where in the record she moved for a continuance and our review of the transcript does not reveal such a contemporaneous motion; rather, as noted above, the transcript shows only a defense attorney's statement of his understanding that the court could declare a mistrial or exclude the evidence. So any claim that the court erred in denying a continuance presents nothing for review. See *Howie*, supra.

Nevertheless, for purposes of review we will presume that there was a discovery violation and that the defense requested a mistrial or exclusion of the evidence.

OCGA § 17-16-6 provides:

If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the [discovery] requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the

25

witness not disclosed, or may enter such other order as it deems just under the circumstances.

"In enacting [OCGA § 17-16-6], the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the [s]tate for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial." *Childs v. State*, 287 Ga. 488, 493 (5) (696 SE2d 670) (2010) (citation and punctuation omitted).

In this case, we find no abuse of discretion by the trial court in allowing the defense to question the witness outside the presence of the jury, rather than declaring a mistrial or excluding the evidence. See *Davis v. State*, 307 Ga. 746, 754 (3) (838 SE2d 263) (2020) (denial of mistrial reviewed for an abuse of discretion and will not be disturbed unless it is essential to the preservation of the right to a fair trial); *Acey v. State*, 281 Ga. App. 197, 200 (2) (635 SE2d 814) (2006) (court not required to consider any particular course of action in any particular order, but has discretion to take corrective action it deems appropriate). "Indeed, under § 17-16-6, the severe sanction of exclusion of evidence applies only where there has been a showing of bad faith by the [s]tate and prejudice to the defense." *Childs*, supra (citation and punctuation omitted). Evans has failed to show bad faith or prejudice, and we

26

conclude that "the trial court did not abuse its discretion in allowing [the witness] to testify." Id.

(b) *Other discovery violations.*

In addition to the alleged discovery violation discussed above, Evans claims that the state continued to violate the rules of discovery throughout the trial. But she has not identified any other specific violations or cited the discovery rules supporting such claims. Instead, she simply refers to parts of the record where the defense allegedly raised discovery arguments at trial. This attempt to incorporate by reference the arguments made before the trial court is a "practice [that] is not approved by this [c]ourt and we decline to look in the record for matters which should have been set forth in the brief. Moreover, if we were to permit this practice a party could evade entirely the [word] limitations on briefs established in our [r]ules." *Dixon v. State*, 320 Ga. App. 257, 261 (1) (739 SE2d 737) (2013) (citation and punctuation omitted). Accord *Williams v. State*, 356 Ga. App. 19, 35 (5) (846 SE2d 190) (2020) (appellant cannot incorporate by reference arguments made in the lower court).

12. *Expression of opinion.*

Evans claims that the trial court improperly expressed opinions on the credibility of multiple witnesses in violation of OCGA § 17-8-57. But she has not shown any such violations.

"It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57 (a) (1). "The purpose of OCGA § 17-8-57, at least in part, is to prevent the jury from being influenced by any disclosure of the trial court's opinion regarding the credibility of a witness." *Murphy v. State*, 290 Ga. 459, 460 (2) (722 SE2d 51) (2012).

(a) *Attempt to incorporate argument by reference.*

Evans cites to a page in the transcript where she claims the defense "raised an issue" regarding an exchange the court had in relation to a witness. But beyond this reference to the record, Evans has made no argument in her appellate brief regarding a specific violation of OCGA § 17-8-57 and has not identified either a particular witness or any particular comment made by the court in front of the jury. As explained above, this sort of attempt to incorporate by reference an argument allegedly made in the trial court is not appropriate and provides nothing for review. *Dixon*, supra. Accord *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 815 (1) (670

28

SE2d 469) (2008) (our review is limited to arguments actually made in appellate briefs).

(b) *Handshake.*

Evans argues that the trial judge violated OCGA § 17-8-57 by shaking a witness' hand. Evans raised the issue outside the presence of the jury and asked the judge to instruct the jury that he knows the witness. The judge subsequently gave the requested instruction, telling the jury that he knows the witness; that when the witness reached up to shake his hand, he reflexively shook it; that the jurors should not give any weight to his testimony because of it; and that the credibility of all witnesses is solely a matter for their determination.

Assuming without deciding that the handshake could be considered an expression of opinion as contemplated by OCGA § 17-8-57, we find that the brief interaction in this case did not amount to an improper comment on the credibility of the witness. "Both this court and our Supreme Court have held that such brief, friendly exchanges between courts and witnesses do not impermissibly comment on a witness's credibility." *Griffin v. State*, 331 Ga. App. 550, 558 (3) (769 SE2d 514) (2015). Evans has not shown a violation of OCGA § 17-8-57 since the brief interaction here cannot be said to have "undermined the integrity of the process or

improperly enhanced the credibility of this witness[.]" *Holland v. State*, 310 Ga. App. 623, 627 (2) (714 SE2d 126) (2011) (citation and punctuation omitted). See *Smith v. State*, 292 Ga. 588, 589-590 (2) (740 SE2d 129) (2013) (trial judge's comment that witness was a "very thorough investigator" did not express an opinion that bolstered the witness' credibility in violation of OCGA § 17-8-57).

(c) *Comments during testimony of defense witness.*

While defense counsel was questioning a witness about a school curriculum, the judge asked how many more witnesses counsel planned to call to testify about the curriculum. When counsel responded that there would be a full day of such testimony, the judge said he thought there would be a point of diminishing returns. Evans did not object to the judge's comments as being improper expressions of opinion on the evidence, so we review only for plain error. See OCGA § 17-8-57 (b). "To establish plain error under OCGA § 17-8-57 (b), [Evans] must point to a legal error that . . . was clear and obvious beyond reasonable dispute, affected [her] substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Barboza v. State*, 309 Ga. 319, 325 (2) (a) (845 SE2d 673) (2020) (citation and punctuation omitted). Evans has made none of these showings and

30

"[s]he therefore has failed to demonstrate plain error." *Bamberg v. State*, 308 Ga. 340, 353 (5) (839 SE2d 640) (2020).

13. *Mistrial for improper contact with jury.*

Evans claims that the court erred in failing to grant her motion for a mistrial after having improper contact with the jury on three occasions: when jurors told the judge in the hallway that they did not know who the prosecutors were, when jurors asked the judge in the hallway about holiday breaks, and when one of the alternate jurors informed the court that she was sick. But pretermitting the issue of whether these communications involved substantive matters that prejudiced Evans, see *Fuller v. State*, 277 Ga. 505, 506 (2) (591 SE2d 782) (2004) (court should have no communication with a juror that would prejudice the accused and such communication should be restricted to matters relating to the comfort and convenience of the jury), is the fact that Evans never moved for a mistrial.

Evans claims in her brief that she moved for a mistrial and that the motion was denied. But the pages of the transcript which she cites in support of these claims show that each time the court informed the parties of the communications with jurors, Evans did not object and did not move for a mistrial. The transcript does show that later in the trial, counsel for another defendant noted that some weeks previously

31

there had been concern about the judge having contact with jurors in the hallway due to the layout of the building and counsel said that he wanted to place on the record his objection to such contact. But he did not move for a mistrial or request any other relief, nor did counsel for Evans or any other defendant request a mistrial.

"Upon being told of [communication between the court and jury], a motion for a mistrial is a proper manner for objecting." *Hanifa v. State*, 269 Ga. 797, 808 (6) (505 SE2d 731) (1998). But a "motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion. If the defendant did not make a contemporaneous motion for a mistrial at the time the defendant became aware of the matter giving rise to the motion, then the defendant has waived review of this issue on appeal." *Thomas v. State*, 310 Ga. 579, 581 (2) (853 SE2d 111) (2020) (citations and punctuation omitted). In this case, "[w]hen the judge explained the encounter[s] to the parties . . . , no [motion for mistrial] was [made]. As a result, [Evans] waived any [review of a mistrial for the] ex parte communication[s]." *Anthony v. State*, 303 Ga. 399, 407 (5) (811 SE2d 399) (2018).

14. *Bias against the defense.*

Evans claims that the trial judge showed bias against the defense. As an initial matter, we note that Evans has not indicated that she sought recusal of the judge or

32

any other specific relief as a result of such purported bias. Regardless, we further note that the examples of alleged bias that she cites merely involved the court's attempts to reduce repetitive questioning of witnesses and control the orderly process of the trial. A "trial judge [may take] such measures as necessary to ensure the orderly administration of the trial[.]" *Moore v. State*, 301 Ga. App. 220, 223 (1) (687 SE2d 259) (2009). See also *Smith v. State*, 297 Ga. 268, 270 (2) (773 SE2d 269) (2015) (trial court has considerable discretion to control the trial to ensure the orderly administration of justice). Indeed, "[i]t is the duty of the trial court to control the trial of the case and to ensure a fair trial to both sides on the disputed issues in the case. Sometimes this requires interference by the court with the conduct of counsel." *Thompson v. State*, 349 Ga. App. 1, 6 (2) (a) (825 SE2d 413) (2019) (citation and punctuation omitted). Here, Evans "has not shown that the trial court abused its considerable discretion in the manner in which it dealt with [her defense] during the [trial]." *Bonner v. State*, 295 Ga. 10, 15 (3) (757 SE2d 118) (2014).

15. *Refusal to instruct jury.*

Evans complains that the trial court erred in refusing to give two requested instructions during the trial about evidentiary matters. But these issues were not preserved for appellate review.

(a) *Stricken testimony.*

First, Evans claims that after certain testimony was struck, the judge erroneously refused a defense request that he tell the jurors not to consider that evidence. But Evans misrepresents what actually occurred at trial. At the time of the testimony, defense counsel asked the court to instruct the jury "to strike that." The court gave the requested instruction and defense counsel thanked the court. The next day, counsel noted that some testimony had been stricken the prior day and asked that "going forward if there is testimony going to be struck," if the court would tell the jury not to consider such evidence. Counsel clarified that he was not asking the judge "to go backwards and do it since I don't remember what it was, but moving forward."

So the trial court did not refuse a timely request to give the instruction for the cited testimony that had been stricken, as there was no such request, contemporaneous or otherwise. Instead, there was only a request the day after the testimony in question for a future instruction in the event of other testimony being stricken later in the trial. Evans has not identified any such other stricken testimony and has not cited any instance when the trial court subsequently refused to give a properly requested instruction. This claim of error presents nothing for review. See *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408, 413 (3) (696

SE2d 663) (2010) ("Issues which have not been ruled on by the trial court may not be raised on appeal.") (citation and punctuation omitted).

(b) *Character witnesses.*

Evans contends that the trial court erred in refusing her request to instruct the jury that the court had limited each defendant to three character witnesses. The transcript shows that when counsel for Evans made the request, he stated that the witness limitation was fine, that the court had discretion to impose such a limitation, and that he did not have a problem with it. See *Mayo v. State*, 261 Ga. App. 314, 316-317 (2) (582 SE2d 482) (2003) (defendant acquiesced in court's curtailment of the number of character witnesses). The judge indicated that he might give such an instruction, but twice asked counsel to provide legal authority for it. Counsel replied, "Okay." And then, without citing any authority, counsel concluded, "I think that's all I have."

Evans has not indicated if counsel ever provided the requested legal authority to the court or ever elicited a final ruling from the court regarding such an instruction. So it is unclear if this enumeration presents a reviewable ruling. *Davis v. State*, 244 Ga. App. 345, 348 (5) (535 SE2d 528) (2000) (enumeration of error presents nothing for review where defendant failed to elicit final ruling by trial court). Nonetheless,

since it appears from the parties' briefs that the trial court never gave the instruction, we will assume for purposes of review that there was a reviewable denial of the requested instruction.

Evans, however, has not cited any legal authority showing that the instruction was required and that the failure to give it constituted error. Moreover, her claim that she was harmed because the jury was left to infer that she was not able to present such character witnesses is unsupported by any evidence as she has not identified any witness whose testimony she was unable to introduce because of the trial court's ruling. "Under these circumstances, we find it highly probable that the failure to issue the requested limiting instruction, even if in error, was harmless and did not contribute to the jury verdict." *Martinez v. State*, 315 Ga. App. 727, 730 (3) (738 SE2d 255) (2012).

16. *Cross-examination.*

Evans contends that the trial court violated her constitutionally protected right of cross-examination by preventing her from exploring a witness' credibility. There was no such constitutional violation.

One of the state's witnesses was a former APS human resources director who testified, among other things, that she had been indicted in the case for a RICO charge

36

and giving false statements, that she had pled guilty to a lesser offense of malfeasance in office, and that she had been given a 12-month probated sentence with various conditions. The defense conducted a lengthy cross-examination of the witness, which included thorough questioning about her guilty plea, her plea negotiations with the state, and her agreement to testify in exchange for the reduced misdemeanor sentence of probation that was significantly less than a possible 25-year felony sentence. When a defense attorney began to ask the witness about statements made by the judge concerning severe consequences after trial, the state objected. The judge noted that punishment was not a matter for the jury to consider and instructed counsel not to interject statements he had made about sentencing The court clarified that the witness could be questioned about the misdemeanor sentence she had received since that went to her credibility.

> Although the Sixth Amendment right to confrontation secures the right of cross-examination, the right of cross-examination is not an absolute right that mandates unlimited questioning by the defense. To the contrary, trial courts retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things interrogation that is only marginally relevant. The permissible scope of cross-examination is committed to the sound discretion of the trial court, and we review a limitation of the scope of cross-examination only for abuse of discretion.

*Smith v. State*, 300 Ga. 538, 541-542 (3) (796 SE2d 666) (2017) (citation and punctuation omitted).

Here, the trial court did not, as Evans contends, abuse its discretion by improperly limiting her ability to explore the witness' credibility with regard to her guilty plea. On the contrary, the court expressly allowed defense questioning of the witness about her guilty plea since it went to her credibility. See *Castleberry v. State*, 274 Ga. 290, 293 (2) (553 SE2d 606) (2001) (on cross-examination, accomplice's guilty plea may be used "to reflect on the witness' credibility"). Indeed, as recounted above, "the record reveals that [defense] counsel engaged in extensive cross-examination of [the witness] as to [her] motives for testifying [in exchange for her plea to a reduced charge and sentence]. Thus, the jury was aware that [she] had turned state's evidence and was in a position to determine whether or not [her] testimony was credible." *McCoy v. State*, 159 Ga. App. 648 (284 SE2d 664) (1981). Under these circumstances, there was no infringement of the constitutional right of confrontation "as alleged by [Evans since the defense] was allowed a thorough and sifting cross-examination of [the witness] and the issue of [her] credibility was squarely before the jury." Id. at 649.

17. *Declaring mistrial sua sponte.*

38

Evans argues that the trial court should have acted sua sponte and granted her a mistrial at various points based on comments made by the judge himself, comments made by the prosecutor, and inquiries from the jury. As an initial matter, we note again that "[w]here a defendant fails to move for a mistrial, [she] waives any appellate argument that the trial court erred by not granting one." *Robinson v. State*, 336 Ga. App. 627, 630 (2) (785 SE2d 304) (2016). See also *Thomas*, supra at 581 (2).

As for the court acting sua sponte, Evans has not shown a manifest necessity for such action.

> A trial court is required to act sua sponte only if there is a manifest necessity for a mistrial. And manifest necessity requires urgent circumstances. Moreover, a trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference. This deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights.

*Moore v. State*, 301 Ga. App. 220, 224 (2) (687 SE2d 259) (2009) (citations and punctuation omitted). Since there has been no showing of the urgent circumstances required for manifest necessity, "we conclude that the trial court did not deprive [Evans] of a fair trial by not declaring a mistrial sua sponte." *Fleming v. State*, 306 Ga. 240, 244 (2) (830 SE2d 129) (2019).

18. *Jury charge.*

Evans claims that a specific intent to violate the law is an element of a RICO conspiracy and that the trial court erred in failing to charge the jury on this specific intent requirement. Evans has not provided any legal authority for her premise that a RICO conspiracy is a specific intent crime other than citing OCGA § 16-14-4. While that code section sets forth prohibited activities under the RICO Act, it does not contain plain language providing that specific intent to violate the law is an element of a RICO conspiracy. See generally *White v. State*, 305 Ga. 111, 114-115 (1) (823 SE2d 794) (2019) (we afford statutory language its plain and ordinary meaning); *Patterson v. State*, 299 Ga. 491, 495 (789 SE2d 175) (2016) (holding that the crime of simple assault as set forth in OCGA § 16-5-20 (a) (2) does not include plain language requiring proof of a specific intent, and noting that it was a matter for the General Assembly to phrase a statute to include such a specific intent requirement).

Moreover, even assuming for the sake of argument that such a specific intent charge might have been appropriate, Evans has shown no reversible error. "We have previously held . . . that a trial court does not err in giving a charge on general intent where the charge as a whole adequately informs the jury about the elements of the specific-intent crime and further informs them of the [s]tate's burden to prove such

40

elements beyond a reasonable doubt." *Aaron v. State*, 275 Ga. App. 269, 270 (3) (620 SE2d 499) (2005). Here, the jury charge as a whole adequately informed the jury about the elements of the RICO conspiracy and of the state's burden of proof, so there was no reversible error.

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*